Argued October 14; decided November 4, 1895; rehearing denied.

## SCHOOL DISTRICT NUMBER TWO v. LAMBERT.

[42 Pac. 221.]

| 28 | 209 |
| 35 | 106 |

1. Power of County Superintendent to Apportion School Funds—Code, §§ 2590-2626.—Hill's Code, § 2626, as amended by Laws, 1893, p. 25, provides that when the limits of any city are changed the limits of the school district therein shall be deemed to have been changed so as to conform to the new limits of the city. Section 2590, subdivision 4, as amended by Laws, 1889, p. 116, provides that when changes are made in any school-district boundaries the boards of directors of all the districts concerned, shall make an equitable division of the assets and liabilities, etc. *Held*, that the county superintendent alone has no right to make a division of assets of the district divided by Laws, 1895, p. 442, changing the boundaries of the City of Portland, as that was the duty of the boards of directors.

2. Mandamus to Compel Apportionment of School Funds.—Hill's Code, § 2590, subdivision 4, as amended by Laws, 1889, p. 116, provides that funds arising from the five-mill county school tax or the irreducible state school fund shall be divided in proportion to the number of persons between the ages of four and twenty years who are actual residents of the district at the time of a division thereof. *Held*, that mandamus will not lie to compel a county treasurer to pay the amount apportioned to a new school district, formed by division of an old one, where the alternative writ fails to show the number of children in both districts, and it does not appear that the number of children in the new district were originally enrolled and enumerated in the original district.

3. Ministerial Act of County School Superintendent.—Where a new school district has been set off from an old district, and the county school superintendent draws on the county treasurer an order in favor of the new district for a share of the irreducible school fund, his act is ministerial only, and the county treasurer is not precluded from questioning the right of such county superintendent to issue the order.

Appeal from Multnomah: E. D. Shattuck, Judge.

This is a mandamus proceeding by School District Number Two of Multnomah County to compel the treasurer of that county to pay an order drawn upon

28 Or.—15.

him by the county school superintendent in favor of the clerk of said district. The facts are that on May twenty-fourth, eighteen hundred and ninety-five, the legislative assembly, by an act which took effect on that day, changed the boundaries of the City of Portland so that a part of the territory formerly within the city limits was excluded therefrom, and, by operation of law, the boundaries of school district number one were also altered to conform to the amended limits of the city. Three days after said act took effect the county superintendent established a new school district, which he designated as number two, the boundaries of which included all the territory cut off from district number one, and some uninhabited and unorganized territory adjoining thereto. On the sixth day of the succeeding month school district number two was duly organized, and L. B. Chapman, having been elected clerk thereof, notified the county superintendent that the number of persons between the ages of four and twenty years who were actual residents of said district at the time of the division was one hundred and fifty, whereupon that officer, after apportioning the school funds in the county treasury among the several school districts of his county, drew an order for school district number two on the county treasurer for the sum of nine hundred and thirty dollars in favor of Chapman, who, being refused payment thereof upon demand, sued out an alternative writ of mandamus requiring the defendant to pay said order or show the cause of his omission to do so. The defendant, for his return, after denying the material averments of the writ, alleged that there were no funds which, under the law, could be apportioned by the school superintendent to school district number two, and no funds in his hands out of which

he could pay the order in question; that the fund intended to be reached by said order was a portion of the school funds which should have been apportioned to school district number one; that on March thirteenth, eighteen hundred and ninety-five, the clerk of the latter district, pursuant to law, filed in the office of the county superintendent the annual census report, containing the names and ages of all children over four and under twenty years of age residing therein, from which it appeared that the number of such persons was nineteen thousand four hundred and seventy-one; that, without warrant of law, and in the absence of any census of the children of school age residing in district number two, the county superintendent, under the pretense that there were one hundred and fifty such children residing therein, illegally attempted to award to said district nine hundred and thirty dollars out of the school fund of district. number one, which district notified him that he would be held personally responsible if he paid upon said order any part of the fund to which it was entitled; and that school district number two was not entitled to any part of the school fund in his hands.   These averments were, by stipulation of the parties, deemed denied, and the court, upon the issues thus made, and an agreed statement of facts, found for plaintiff as to the facts, and, as conclusions of law, that school district number two was entitled to the money apportioned to it by the county superintendent, and that it was entitled to a peremptory writ of mandamus compelling the defendant to pay the same to its clerk, and judgment having been rendered according to these findings the defendant appeals.                               REVERSED.

For appellants there was a brief by *Messrs. George, Gregory and Duniway,* with an oral argument by *Mr. Melvin C. George.*

For respondent there was a brief by *Messrs. Williams, Wood and Linthicum,* with an oral argument by *Mr. George H. Williams.*

Opinion by MR. JUSTICE MOORE.

It is contended by the defendant that, the boundaries of the City of Portland having been changed and a portion of the territory cut off, the school district boundaries which were identical with those of the city were changed to the same extent by operation of law; that when a public corporation is divided by a legislative act, which makes no provision for the distribution of the assets and liabilities between the sections of the territory thus separated, courts are powerless to adjust the equities or to award such distribution; and that, conceding school district number one was divided for "school purposes," within the meaning of the statute, the school superintendent has no authority to divide the school fund between the respective districts until their school boards have made an equitable division of the assets and liabilities, or a board of arbitration, in case of disagreement, has adjusted the matter; while the plaintiff insists that under the general provisions of the statute the county superintendent has such authority, and that it is made his duty to divide the school fund between the districts created out of the original territory.

1. The legislative assembly on October twenty-sixth, eighteen hundred and eighty-two, passed an act which has been incorporated in Hill's Code of Oregon

as sections 2625 to 2646, inclusive. The first two sections of this act, as amended, (Laws, 1893, p. 25,) provide (section 2625): "Whenever the population of any city or incorporated town shall exceed four thousand inhabitants, as shown by any census of the state or of the United States, all school districts or parts of school districts within the limits of said city shall constitute one school district, and the boundaries and limits of such school district shall conform to the limits and boundaries and shall be the same as the limits and boundaries of said incorporated city or town; *provided,* that in all cases when any part of any school district shall be included in any such incorporated city or town, and a part thereof shall not be included within the boundaries of said city or town, at the time this act shall take effect, such parts of such school districts as lie without the boundaries of such city or town shall continue to be a part of such school district." "2626. When the limits or boundaries of any incorporated city or town containing four thousand inhabitants or more, which has been by this act constituted a school district, are changed according to law, then the boundaries and limits of the school district therein shall be deemed to have been changed also so as to conform to the new limits and boundaries of such incorporated city or town." The act of February twenty-third, eighteen hundred and ninety-five, (Laws, 1895, p. 442,) amendatory of the charter of the City of Portland, changed the boundaries thereof, and cut off a portion of the territory formerly within its limits, and, when it took effect, on May twenty-fourth of that year, under the provisions of section 2626, it *ipso facto* changed the boundaries of school district number one.

Section 2590 of Hill's Code, as amended in eighteen hundred and eighty-nine, (Laws, 1889, p. 116,) provides that, "The duties of the superintendent shall be as follows: 1. He shall lay off his county into convenient school districts, and may also make alterations and changes in the same when petitioned so to do, in the manner hereinafter specified; and he shall make a record showing the boundaries and numbers of all the districts in his county so established and altered. 2. He shall, when he establishes a new district, immediately notify, in writing, some taxable inhabitant of such district, giving in such notice the number and boundaries thereof; and when he makes alterations he shall immediately, in the manner aforesaid, notify the directors of all the districts concerned. 3. He may establish new districts, when not already laid off, on petition of three legal voters of each proposed new district, but shall not make any changes in the districts of his county unless petitioned so to do by a majority of the legal voters of each district concerned in the change." 4. "When changes are made in district boundaries as heretofore set forth, or when any district shall be divided into two or more parts for school purposes, the existing board of directors and clerk shall continue to act for both or all the new districts or parts of districts until such districts or parts of districts shall have been regularly organized by the election of directors and clerks as hereinafter set forth in sections 30, 31, 32, and 33, title IV of the school law. The respective boards of directors of all the districts concerned shall, immediately after such organization, make an equitable division of the then existing assets and liabilities between the old and the new districts, or between the districts already existing and affected by such change; and in case of fail-

ure to agree within ten days from the time of such organization, the matter shall be decided by a board of disinterested arbitrators chosen by the directors of the several districts concerned. The arbitrators' decision in the premises shall be final. The said board of arbitrators shall consist of three members, of whom the county superintendent shall be a member, and *ex officio* chairman. Each member of the board of arbitrators shall be entitled to the sum of two dollars, net, per day, for each day's service while sitting in their official capacity, and the expenses thus occurring shall be equally apportioned among the several districts interested. Assets shall include all school property and moneys belonging to the districts at the time of the division. Liabilities shall include all debts for which the district, in its corporate capacity, is liable at the time of the division. In determining the assets, school property shall be estimated at its present cash value. The assets and liabilities shall be divided separately between the districts, in proportion to the last assessed value of the property, real and personal, and the district retaining the real property shall pay to the other district or districts concerned such sum or sums as shall be determined in accordance with the prior provisions of this section; *provided,* that all funds arising (and that shall arise during the current year in which such division is made) from the five-mill county school tax or the irreducible state school fund shall be divided in proportion to the number of persons between the ages of four and twenty years who are actual residents of the district at the time of the division."

This amendment having been made after the passage of section 2626, the question is suggested whether the latter section is wholly superseded thereby. The

various sections of the statute in relation to the management of the public schools constitute a system which should be construed, if possible, *in pari materia;* but where the last statute is complete in itself, and intended to prescribe the only rule to be observed, it will not be modified by the displaced legislation, as laws *in pari materia :* Sutherland on Statutory Construction, § 286. An examination of sections 2625 and 2626 of the Code shows the manifest intention of the legislature to take from the county superintendeut all authority to alter the boundaries of school districts organized within incorporated cities containing four thousand inhabitants, and to reserve such power to itself. It also appears from subdivision 5 of section 2631, which is part of the act of October twenty-sixth, eighteen hundred and eighty-two, that it is made the duty of the board of directors of school districts organized within incorporated cities of four thousand inhabitants to create a board of examiners for the purpose of examining all persons who may be employed to teach therein, and, although the county superintendent, whose duty it is to examine applicants for and to grant certificates to all persons employed to teach in his county, is made *ex officio* chairman thereof, it nevertheless shows an intention on the part of the legislative assembly to take from that officer much of his supervisory authority over city schools. It is therefore evident that the act of October twenty-sixth, eighteen hundred and eighty-two, took from the county superintendent all authority to change the boundaries of any district created by such act, and that it made no provision for the division of its property in case of a change in its boundaries by the legislature, and such must be the law unless changed by subdivision 4 of section 2590. This subdivision pro-

vides that "When changes are made in district bound-
aries as heretofore set forth," (meaning thereby such
changes as are made by the county superintendent
upon the petition of a majority of the legal voters of
each district concerned therein, as prescribed in subdi-
vision 3,) "or when any district shall be divided into
two or more parts for schools purposes," the boards of
directors shall make an equitable division of the assets
and liabilities, etc.   There are only two methods by
which the boundaries of organized school districts can
be changed, *first,* by the county superintendent directly
upon the petition of a majority of the legal voters of
each district concerned in such change; and, *second,* by
an act of the legislative assembly changing the bound-
aries of an incorporated city, and thereby changing
indirectly the boundaries of the school district therein.
Assuming without deciding that the primary object of
the legislative act changing the boundaries of the city
was to subserve the interests of the corporation, but,
as the effect was to change the boundaries of the
school district also, and as the amendment of section
2590 was made after the passage of the act of Octo-
ber twenty-sixth, eighteen hundred and eighty-two, it
must be presumed that the legislative assembly was
cognizant of and referred to the prior act in the sys-
tem of school laws, and that by making use of the
phrase, "or when any district shall be divided into
two or more parts for school purposes," that body
meant a division by either of such methods; any other
construction would render the phrase superfluous and
meaningless.   In view of this construction can the
county superintendent apportion the school fund of a
district which has been divided by a legislative act
without an adjustment of the fund by the boards of

directors of the districts interested therein, or by a board of arbitrators in case of disagreement?

The latter clause of subdivision 4 of section 2590 provides that the five-mill county school tax and the irreducible state school fund shall be divided in proportion to the number of persons between the ages of four and twenty years who are actual residents of the district at the time of the division of such funds. That subdivision also prescribes the mode which is to be pursued by the boards of directors in the division of the assets and liabilities of the divided school district, and, upon their failure to agree upon an equitable division thereof, it further provides for the appointment of a board of arbitrators, of which the county superintendent, by right of his office, is constituted a member, and the chairman thereof. The statute, having prescribed the persons who should make this equitable division, impliedly excludes all others from taking any part therein, and this being so, by what legal right can the county superintendent make the division except as a member of the board of arbitrators? But, assuming that this fund is no part of the assets of a district until it has been apportioned to and received by it, and that the latter clause of subdivision 4 sanctions an apportionment of the particular fund by that officer, it will be observed that such subdivision also provides that the division shall be made in proportion to the number of persons between the ages of four and twenty years who are actual residents of the district at the time it is made. This provision, fairly interpreted, evidently means that the fund to be divided must bear the same proportion to the amount awarded to the new district that the whole number of persons of school age in the original district bears to the number of such persons in the

territory cut off from it. The district was divided
May twenty-fourth, eighteen hundred and ninety-five,
when the act of the legislative assembly went into ef-
fect, and, though the territory cut off by the act was
not organized until the sixth day of the succeeding
month, when a board of school directors and clerk
were elected therein, the board of directors and clerk
of district number one, by express provision of the
statute, continue to act for the new district until its
organization: Section 2590, subdivision 4, Hill's Code.

2. The records show that there were one hundred
and fifty persons of school age in district number two
at the time of the division, but it does not appear how
many persons of that age there were in school dis-
trict number one at that time. The statute requires
the clerk of each school district to enroll annually,
for school purposes, all persons in his district over
four and under twenty years of age, and, when com-
pleted so as to show the names and ages of such per-
sons, to submit the enrollment made, under oath, to
the directors and citizens of the district at the regular
annual meeting in March for necessary correction,
and, after being corrected, to retain the same in his
office, and file a copy thereof with the county superin-
tendent not later than the fifteenth of that month:
Code, section 2619, subdivision 5. The school clerk of
district number one, in pursuance of this provision,
made, and on March thirteenth, eighteen hundred and
ninety-five, filed in the office of the county superin-
tendent his annual census report, from which it ap-
pears that there were at that time nineteen thousand
four hundred and seventy-one persons of school age
in the district; but, assuming that the census thus
made is presumed to show the number of persons in

the district at all times during . the school year in
which it was prepared,—and this presumption is rea-
sonable, since there is no authority for taking another
census,— it does not appear that any of the one hun-
dred and fifty persons residing in district number two
were enrolled in or that their names were found upon
the annual census of school district number one.   The
rule is well settled that in mandamus proceedings the
alternative writ, which is in the nature of a complaint,
must show a clear right to the performance of the
public duty which is sought to be enforced: Merrill
on Mandamus, § 255; Wood on Mandamus, 17; Moses
on Mandamus, 206.   It is another rule equally well
settled that it is unnecessary to allege in a pleading
any facts the existence of which the law will presume
(Bliss on Code Pleading, 3d ed., § 175); and, since
the law presumes that official duty has been regularly
performed, (subdivision 15, § 776, Hill's Code,) it was
unnecessary to allege any facts showing the method
by which the county superintendent arrived at the
conclusion that there were one hundred and fifty per-
sons of school age in district number two.   While
these facts need not be averred in the alternative writ
by reason of presumption, yet such presumption is not
conclusive, and, the defendant's return having tendered
an issue challenging the right of the clerk of school
district number two to make the report, the issue pre-
sented became one of fact, to establish which the bur-
den was cast upon the defendant (*National Bank* v. *Har-
old,* 74 Cal. 603, 5 Am. St. Rep. 576, 16 Pac. 507); and,
the agreed statement of facts showing a want of com-
pliance with the terms of the statute, the clear right
to the performance of the public duty has not been
established.

It may be conceded that a school district has no

vested right to the money arising from the levy of the county school tax, or interest on the irreducible state school fund, until the money has been segregated and apportioned to the district; but it has an inchoate right to the funds, and by mandamus may compel a division thereof by apportionment based upon the annual census of the school clerk. The right to this fund is not in the child, though a per capita division is made for his benefit; for, if it were so, it would follow that the child, by removing from the district at any time within the year after he was enrolled, and before the fund had been expended, could take his portion thereof with him to another district in the county; and if he could do that, he could on the same reasoning take it to any district in the state. True, he may remove to another district, and thus increase the number of school children therein entitled to the school fund under another census, but, except in case the district is divided, no part of the fund which the district received in consequence of his residence can be diverted to the use of another district on account of such removal; and if all the children moved out of the school district after the annual census had been taken, but before the fund received in consequence of their enumeration had been expended in their education, the money thus received would have to be returned to the county treasury for reapportionment (Section 2608, Hill's Code); thus showing that the right is not in the child but in the district as an agent of the state in trust for his education. When a district has been divided, and the duty of educating a part of the school children has been cast upon another district, fair dealing demands an equitable division of this fund, and our statute has prescribed the method. No provision is made for taking another census as the

basis of this division, and hence it is fair to presume, since the clerk is required to state the name and age of each child in his annual enrollment, that the number so found shall be deemed the number actually residing in his district at all times during the ensuing school year, and upon a division of the district the number of children in each part would be easy of ascertainment from an inspection of the clerk's census roll on file in his office. It is also fair to presume that the county superintendent is authorized to divide the fund apportioned to a district upon receiving the statement of the number of school children in each part after a division, from the boards of directors, or, upon their failure to agree, from the board of arbitrators, and to apportion the school fund to the respective districts, not upon a new enrollment, but upon the basis of the old, in accordance with the directors' agreement or the arbitration; but, in the absence of such a settlement by or in behalf of the districts, we fail to find any authority in the statute by which the school superintendent could divide this fund.

3.    Counsel for the respondent contends in his argument that, the county superintendent having drawn an order which was payable out of a particular fund, the apportionment of which was solely within his power, it is the duty of the county treasurer upon whom the order is drawn to pay it on presentation, and that he is precluded from questioning the right of the county superintendent to issue the order, except in a direct proceeding to review his action, even though he may have erred in his construction of the law. The rule of law contended for is not applicable unless the county superintendent in drawing the order was exercising judicial and not ministerial functions:

Hill's Code, § 585; *People* v. *Bush,* 40 Cal. 344; *Thompson* v. *Multnomah County,* 2 Or. 34. "As a general rule," says Mr. Throop in his work on Public Officers, § 552, "judicial and quasi judicial acts are conclusive, except when a method of reviewing the same is given by statute; and then they are conclusive for every purpose, except for the purpose of such a review." Where the law authorizes a person to hear and determine issues between parties, the granting or refusal of the relief demanded therein is a judicial act; but where a power vests in judgment or discretion, so that it is of a judicial nature or character, but does not involve the exercise of the functions of a judge, or is conferred upon an officer having no authority of a judicial character, the expression used is generally "quasi judicial," so that where, in the exercise of a power, an officer is vested with a discretion, his act is regarded as quasi judicial: Throop on Public Officers, § 553; *United States* v. *Arredondo,* 31 U. S. (6 Pet.), 689; *United States* v. *California and Oregon Lumber Company,* 148 U. S. 31 (13 Sup. Ct. 458). But if an officer or board, vested by law with a discretion, act in excess of the power conferred, and audit a claim which is not legally chargeable against the corporation for which he or it acts, the treasurer thereof may refuse to pay an order drawn upon him as evidence of the amount so awarded: Throop on Public Officers, § 554. "If the demand for which the warrant is drawn," says NORTON, J., in *Keller* v. *Hyde,* 20 Cal. 593, "was not legally chargeable against the county, the treasurer may show this fact in answer to a demand for a mandate to compel him to pay it. The party asking the mandate must be entitled to the money as against the county, of which the treasurer is only the disbursing agent, or the mandate will be refused." If the person doing

an act is a ministerial officer only, and not vested by law with a discretion to grant or deny the subject matter demanded, his act is not conclusive, and he must show in justification that he has acted within the provisions of the statute conferring the power, and if he has not done so, he is liable to the person specially injured thereby: Mechem on Public Officers, § 664; *Flournoy* v. *City of Jeffersonville,* 17 Ind. 129 (79 Am. Dec. 468); *Robinson* v. *Chamberlain,* 34 N. Y. 389 (90 Am. Dec. 713); while judicial and quasi judicial officers are not liable to private action for acts within their jurisdiction: Mechem on Public Officers, § 619. "The duty is ministerial," says CLOPTON, J., in *Grider* v. *Tally,* 77 Ala. 422 (54 Am. Rep. 65), "when the law exacting its discharge prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty arising from designated facts, is a ministerial act." The statute prescribes the time and manner of making the apportionment with such certainty that nothing remains for the judgment or discretion of the county superintendent, (subdivision 5, § 2590, Hill's Code,) and hence that officer in drawing the order in question was performing a ministerial duty only. This order being presumably regular upon its face, the county treasurer would have incurred no personal liability if he had paid it without notice of facts sufficient to put an ordinarily prudent treasurer upon inquiry which if diligently prosecuted would lead to a discovery of the illegality of the claim upon which the order was founded: *Los Angeles County* v. *Lankershim,* 100 Cal. 525 (35 Pac. 153, 556); but, having received such information, and being notified that he would be held personally liable, it was the duty of the county treasurer,

if he had any reasonable doubt upon the subject, to contest the payment. It follows that the judgment must be reversed, and the cause remanded with instructions to deny the peremptory writ, and it is so ordered.                                             REVERSED.