[Civ. No. 14402.  First Dist., Div. Two.  Oct. 9, 1950.]

WOMEN'S ATHLETIC CLUB OF SAN FRANCISCO (a Corporation), Appellant, v. THE ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO (a National Banking Association), Respondent.

Morgan J. Doyle and J. Joseph Sullivan for Appellant.

McKinstry, Haber & Coombes for Respondent.

GOODELL, J.—Appellant sued to quiet title to real property. Judgment went in favor of respondent and this appeal was taken.

In 1915 appellant was incorporated under title XII of part IV, division I, of the Civil Code—"Religious, Social and Benevolent Corporations"—for the purpose of maintaining an athletic club for women.

Prior to January 19, 1924, the club had acquired a piece of land with a frontage of 137 feet 6 inches on the northerly line of Sutter Street west of Mason, in San Francisco, and on that day it initiated a proceeding in the superior court under section 598, Civil Code, for authority to borrow money and issue bonds secured by a deed of trust on the property. On January 30, the order was made, and on February 1, 1924, the corporation executed to Anglo California Trust Company, predecessor of respondent as trustee, a deed of trust securing the bonded indebtedness of $250,000 so authorized.

At the time this suit was commenced $95,000 of bonds remained unredeemed, on which no interest had been paid since August 1, 1934.

The underlying purpose of appellant in this litigation is to secure an adjudication that its real property is free and clear of the deed of trust. The contention is that the bonds thereby secured were unauthorized by law.

After the bonded indebtedness was approved the corporation law of this state was extensively amended, but on this appeal we are of course concerned only with the statute law as it read when the deed of trust was executed.

At that time the subject of "Corporations" was dealt with in part IV of division I, of the Civil Code, Part IV was divided into 25 titles, the first thereof containing "General provisions applicable to all corporations," and the other 24 relating specifically to different types of corporate organizations.

Section 354, which appeared under "General provisions applicable to all corporations," provided that "Every corporation, as such, has power: . . . 8. To enter into any obligations or contracts essential to the transaction of its ordinary affairs, or for the purposes of the corporation." This language meant, of course, that *every corporation* had this inherent power by virtue of its existence *as such*.

Section 354 placed no limitation or restriction on any type or kind of corporation or on the type or kind of security. Its only restriction was with respect to the application of the borrowed money, and in this case that question is set at rest by a stipulation that the $250,000 was used "in part in discharge of then existing indebtedness of plaintiff, and in part in paying the cost of betterments and improvements of a building . . . on said real property . . ."

Turning to title XII under which the club was organized, we find that section 599 read as follows: "Corporations now organized or that may hereafter be organized for purposes other than profit, may, either in their by-laws, ordinances, constitutions, or articles of incorporation, provide for: . . . (7) . . . Contracting, securing and limiting the amount of their indebtedness; . . ."

There is found therein no restriction as to the type or kind of security and no prohibition against issuing bonds. It is interesting to note that in neither of its briefs does appellant mention, or in any way recognize the existence of, that provi-

sion. Section 599 is perfectly consonant with section 354, the basic section dealing with *all* corporations, and both sections are authority for the provisions in the club's articles with respect to indebtedness and security. In the statement of purposes the articles contain the following: ". . . to maintain a club-house, gymnasium, general athletic equipment, and all accommodations of every description for the use of its members; to purchase, lease, sell, convey, *mortgage, encumber by deed of trust,* and otherwise generally operate *such real estate, buildings,* and personal property as may be necessary and convenient to carry on the purposes of the said corporation, and *to issue bonds,* notes and all other evidences of indebtedness *secured by mortgage, deed of trust or other form of security upon* either *real property* or personal property, or both, necessary and convenient to carry on the purposes of said corporation, and to provide for the convenience and comfort of its members, . . ." (Emphasis added.)

Section 598, in title XII, contained the statutory machinery for authorizing a religious, social or benevolent corporation to encumber its property. It read: "Before selling, *mortgaging,* aliening, *encumbering* or granting *its real property,* or any part thereof, . . . a corporation organized under this title must first make it appear that the same is for its interest to the satisfaction of the superior court of the county wherein said real property is situated." The procedure is then prescribed for such proceeding and the hearing therein. It then provided: "If satisfied that it is for the interest of said corporation, said court shall thereupon grant said leave, and may authorize the said corporation to sell and convey its said property and to *incur indebtedness and secure the same by deed of trust or mortgage upon its said real property.*" (Emphasis added.)

Again, there was no restriction against issuing bonds.

The corporation proceeded under section 598 to obtain the authorization of the superior court to place upon its real property a deed of trust to secure a bonded indebtedness of $250,-000 and to issue and sell the bonds. It is admitted that all the prescribed procedural steps were taken.

Appellant's contention on this appeal revolves entirely around section 359, Civil Code. That section was found among the "General provisions applicable to all corporations" and plainly dealt with corporations "having a capital stock." A mere glance shows that it was never designed for a nonstock, social corporation. It read: ". . . Every corporation organ-

ized under the laws of this state *having a capital stock . . .* may create or increase its . . . bonded indebtedness subject to the following provisions: . . . 3. . . . The bonded indebtedness of a corporation may be created or increased by a vote of the *stockholders* representing at least *two-thirds of the* subscribed or issued *capital stock* at a meeting called by the board of directors or trustees, . . ." (Emphasis added.)

Appellant argues that section 359 was the only section providing for the issuance of corporate bonds; that it gave the power to issue bonds to such corporations only as had a capital stock; that the club made no attempt to comply with that section (which is admitted), and that, because a social club is not within its purview, it is not only not authorized to issue bonds but definitely prohibited from doing so. Section 359 having spoken on the subject, so it is argued, every other medium and method is excluded (*"Expressio unius est exclusio alterius"*).

These arguments ignore section 598, Civil Code, which, avowedly, was the section under which the club sought and obtained its authority to issue bonds, and they ignore as well the provisions of section 403, Civil Code (just as appellant ignored the provisions of § 599). Section 403 read as follows: *"Title one to apply to all corporations, with certain exceptions.* The provisions of this title are applicable to every corporation, unless such corporation is excepted from its operation, or *unless a special provision is made in relation thereto inconsistent with some provision in this title, in which case the special provision prevails."* (Emphasis added.)

Section 598 was designed to provide religious, social and benevolent corporations with the legal machinery for borrowing money for their own needs, and its provisions are certainly inconsistent with those of section 359.

Appellant's argument that section 359 applies to *all* corporations (in support of which it cites *Market Street Railway Co.* v. *Hellman,* 109 Cal. 571 [42 P. 225], and *Boyd* v. *Heron,* 125 Cal. 453 [58 P. 64]) is entirely destroyed by the provisions of section 403. So, also, is its argument based on the *"Expressio unius est exclusio alterius"* rule.

It is true that neither section 598 nor section 599 expressly mentions "bonded indebtedness," while section 359 does. This, however, can make no difference. The basic section 354, gives the power to every corporation, as such, "To enter into *any* obligations or contracts . . ." without limiting the type

or kind of obligations. Section 599 authorizes the articles to provide for "Contracting, securing and limiting the amount of their indebtedness" without limitation. The club's articles, as we have seen, contemplate the issuance of bonds. Section 598 places no limitation on the kind or type of security.

It seems to be settled law that in 1924 a bond mortgage could be entered into without any express provision in the statute for "bonds" or "bonded indebtedness."

In 7 California Jurisprudence page 89, section 580, which was written before the corporation law was amended, we find: "Authority to borrow money and give evidences of indebtedness created is an implied power of corporations which may be exercised whenever necessary to carry out their purposes. Bonds constitute one form of evidence of indebtedness, and are generally used where large amounts are involved, and a formal authorization required. In their nature as contracts, however, there is no essential difference between bonds and promissory notes . . ." A footnote adds: "At common law, a corporation has power to issue a bond or note to pay a debt, and it has just as much right to do so under the general law as a natural person. *McLane* v. *Placerville etc. Co.*, 66 Cal. 606, 6 P. 748."

"It is well settled generally that corporations, under their implied or incidental power to enter into obligations which serve to effectuate the purposes of their creation, have the power, in the absence of an inhibitory statute, to issue bonds or debentures as evidence of their indebtedness. A like power exists as an incident of the power to borrow money." (13 Am.Jur. p. 842, § 847.)

In 19 Corpus Juris Secundum, section 1147, we find: "In the absence of charter or statutory restrictions, a corporation has the implied power to execute and issue its bonds for any purpose for which it may borrow money or contract a debt . . . This power is implied from the power to borrow money, or to contract debts, or to hold, purchase, and convey real estate, or to purchase shares of another corporation, or to make contracts, or to mortgage its property."

Jones on Bonds and Bond Securities, volume 2, section 631, says: "There is no proposition more definitely determined than the one that private corporations, in the absence of any regulatory or inhibitory statute, have the power to issue bonds as evidence of indebtedness under their incidental power to incur obligations in carrying out the ends of their creation." See, also, *Id.*, section 632.

6a Fletcher, Cyclopedia of Corporations (permanent edition), section 2650, contains substantially the same statement.

We are satisfied that by virtue of the order of January 30, 1924, which was made under the provisions of section 598, Civil Code, the appellant was legally authorized to issue and sell its $250,000 Refunding 6 per cent Sinking Fund Gold Mortgage Bonds dated February 1, 1924, maturing 20 years from that date and secured by deed of trust, and that the latter instrument is, as found in the decree, "in all respects valid."

Other points are discussed in the briefs, but as the arguments thereon are based on the possibility of irregularity a review of such points and the authorities supporting them is wholly unnecessary and would be inconsistent with our conclusion that the bonds and deed of trust are perfectly valid.

The judgment is affirmed.

Nourse, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 7, 1950.