161    349
s101a 472

THE STATE ex rel. WHEELER v. ADAMS, County
   Treasurer.

**In Banc, March 26, 1901.**

1. **Mandamus:** RETURN: MOTION NON OBSTANTE: PRACTICE.   Where re-
   lator, in a mandamus proceeding, moves for a peremptory writ
   notwithstanding respondent's return, all averments of facts suffi-
   cently well pleaded in the return will be taken as admitted.   But
   such motion does not admit conclusions of law, nor matter not well
   pleaded.

State ex rel. v. Adams.

2. ————: ————: PLEADING: DENIAL: COUNTY WARRANTS. Counter statements or different versions of the petition's allegations, are not denials thereof. A statement in the county treasurer's return that at the time a warrant was presented to him for payment there was no money in the treasury out of which the warrant could have been paid, is not a denial of the petition's allegations that the warrant was issued against the swamp land fund, and that at the time it was presented for payment there was money enough in such fund to have paid said warrant and all other unpaid warrants. Under such return the respondent treasurer will not be heard to say there are no funds in his hands applicable to the payment of the warrant which its holder asks the court to compel him to pay. Such averments must be specifically denied.

3. ————: ————: ————: CONCLUSIONS OF LAW: CANCELLATION OF COUNTY WARRANTS. The allegation in the county treasurer's return to a mandamus suit to compel him to pay a county warrant, to the effect that the previous contract with the relator for the purchase of swamp lands had been "cancelled for the reason that the relator had failed to comply with his contract," is a conclusion of law, pure and simple, and a motion for judgment notwithstanding the return does not admit that such contract was legally cancelled.

4. ————: REMEDY: COUNTY TREASURER. Couny treasurers are simply ministerial officers and can be compelled to perform their duty by mandamus.

5. ————: ————: ————: PAYING WARRANTS. Where the issuing of a warrant was within the scope and authority of the county court, the county treasurer may be compelled by mandamus to pay it if he has in his hands, belonging to the fund against which it is drawn, enough money to pay it and all unpaid warrants of prior presentation.

6. Swamp Land Fund: SCHOOL MONEY. Where the county court has kept and maintains in the hands of the county treasurer, a swamp land fund to provide for the payment of warrants which may be drawn against said fund on account of the county's swamp lands, the county treasurer can not refuse to pay a warrant drawn by the court against such fund to pay back to a purchaser of swamp land to which the county could not make good title, the advanced or partial payment made by him as a part performance of such contract. In such case, the treasurer can not refuse to pay such warrant on the theory that the statute provides that the net proceeds arising from the sale of swamp lands, after deducting the expenses of draining and re-

State ex rel. v. Adams.

claiming the same shall become a part of the school fund of the county. In such case such statute does not apply.

7. ———: CONTRACT OF PURCHASE: CANCELLATION: SECTION 8213, R. S. 1889. To authorize a cancellation by the county court of a contract of purchase of swamp land, under section 8213, Revised Statutes 1889, it must appear that the other party was unable to carry out his part of the contract by paying the balance of the purchase money, and that it has been cancelled on his application.

8. ———: ———: ———: SECTION 8215, R. S. 1889. The statute (sec. 8215, R. S. 1889) authorizes the county court, with the consent of the purchaser, to cancel a contract of purchase of swamp lands to which the court is unable to make good and sufficient title. The county in this case sold relator a large amount of swamp lands, and he paid $3,000 on the purchase price, which was placed in the swamp land fund, and was given ninety days in which to pay the balance. Before that time expired, the time of payment was extended until such time "as the title to the land should be judicially determined." Afterwards, the court without his consent, rescinded the contract, and, by way of settlement with him after he had brought suit for damages, among other things, issued to him a warrant for the amount of the advanced payment and interest, drawn against the swamp land fund of the county. The treasurer refusing to pay this warrant on the theory that the net proceeds of the swamp land fund, after paying for drainage and reclamation, become a part of the school fund, the purchaser brought mandamus, and the treasurer in his return set out the terms on which the time of payment was extended, but did not allege, that the title of the lands had ever been judicially determined. *Held*, that under this state of the pleadings, it will be held that the court arbitrarily cancelled the contract, without any authority in the statute to do so, and that its attempt to recoup the purchaser for the damage done him by paying him out of the swamp land fund (the fund which had received it), was legal and proper.

### *Mandamus.*

PEREMPTORY WRIT AWARDED.

*E. R. Lentz* for relator.

(1)    (a) Mandamus will lie to compel the county treasurer to pay a warrant legally drawn upon him where he has money in his hands with which to pay the same.    State ex rel. v. Treasurer Callaway Co., 43 Mo. 229; State ex rel. v. Justices Bollinger Co. Ct., 48 Mo. 477; State ex rel. v. Haynes, 72 Mo. 378.    (b) And where the warrant is drawn upon a special fund it is not necessary to reduce it to a judgment before resorting to mandamus.    No judgment thereon could be recovered against the county.    State ex rel. v. Bollinger Co. Ct., 48 Mo. 477; Sheridan v. Fleming, 93 Mo. 321; Kingsbury v. Pettis Co., 48 Mo. 209.    (2) In this case the return does not deny any allegation in the alternative writ, and therefore all material allegations in the alternative writ must be taken as true for the purposes of this case.    R. S. 1899, sec. 628; Bartholow v. Campbell, 56 Mo. 120.    The return must not be evasive, but should fairly meet the allegations of the petition and present sharply defined issues to be passed upon by the triers of the facts.    R. S. 1899, sec. 604; Snyder v. Free, 114 Mo. 367; Boles v. Bennington, 136 Mo. 529; Dare v. Railroad, 31 Mo. 482.    In this case the warrant in question is drawn upon a particular fund; the allegation of the alternative writ is sharp and clear that, on the date when said warrant was issued and at all times since and now, there was and is in the hands of the treasury, money belonging to that fund amply sufficient to pay said warrant, as well as all warrants of prior date and registration.    There is no pretense of denying this allegation. But respondent without attempting to deny this allegation, says, "there is no money in the treasury out of which said warrant could be paid."    He admits (by his failure to deny) that there is and has been money in his hands belonging to this particular fund sufficient to pay this warrant, and yet says there is no money out of which it could be paid.    This allegation is too indefinite and uncertain and does not put in issue the alle-

gations of the writ, and wholly fails to meet the requirements of the rule above referred to. (3) The county court had the right and power to keep and maintain the fund known as the swamp land fund, and was authorized by law to draw warrants upon that fund. R. S. 1899, sec. 8314; Laws 1897, p. 155, sec. 28; Laws 1895, p. 44, sec. 638; State ex rel. v. Bollinger Co. Ct., 48 Mo. 477. The county court was, by law, given the full power and control over the swamp lands patented to the county. R. S. 1899, sec. 8249. The county court was required to use said lands as well as the proceeds thereof in draining and reclaiming the same. The county had no more right to keep and retain relator's money without giving an equivalent therefor than had an individual. (4) It is manifest that these two contracts must be taken and read together; and if so taken, then it is perfectly apparent that there has been no breach of the said contract, at least so far as relator is concerned, for it is not shown by the said return that the title to these lands have ever been settled or judicially determined. And if they have not, then there is no breach of said contract on Wheeler's part, and consequently no forfeiture of said $3,000. Forfeitures are not favored at law or in equity. Froelich v. Ins. Co., 47 Mo. 406; Messersmith v. Messersmith, 22 Mo. 369; Moore v. City of Jefferson, 45 Mo. 205.

*Johnson, Houts, Marlatt & Hawes* for respondent.

(1) The motion for peremptory writ of mandamus, after return to the alternative writ and notwithstanding such return, is in the nature of a demurrer, and admits all the facts well pleaded in the return. State ex rel. v. Newman, 91 Mo. 445; State ex rel. v. Smith, 104 Mo. 661; State ex rel. v. Neville, 110 Mo. 345. (2) Although a county court may have passed

regularly upon a claim against a county, and issued a warrant upon the treasurer for its payment, and although upon the presentation of such warrant so drawn, it is the duty of the treasurer to pay it, the Supreme Court, upon application for mandamus against the treasurer to compel its payment, will look into the claim allowed by the court; and if it should appear that the county court had, by mistake or otherwise, audited an illegal claim, or one which should have been rejected, the Supreme Court will refuse the writ of mandamus and leave the parties to such remedies as they may have by ordinary proceedings. State ex rel. v. Treasurer, 43 Mo. 230; State ex rel. v. Bollinger Co. Ct., 48 Mo. 478; People ex rel. v. Lawrence, 6 Hill, 244; People ex rel. v. Edwards, 6 Hill, 472; People ex rel. v. Stout, 6 Hill, 350; Baker v. Johnson, 41 Maine, 15; Hooper v. Ely, 46 Mo. 505. (3) Mandamus is not a proper remedy. Relator has another remedy at law. R. S. 1899, sec. 6808; Andrew County ex rel. v. Schell, 135 Mo. 31. (4) Where a purchaser of swamp lands fails to complete his contract of purchase, and the contract is, for that reason cancelled by the county court, that court is expressly prohibited by statute from repaying partial payments made under that contract. The return herein sets up such a sale and cancellation of contract. The warrant set out in the petition was, therefore, illegally issued by the court. R. S. 1899, sec. 8213. (5) The swamp lands of this State are held by the different counties in trust for the school fund, and the county courts have no authority to devote such lands, or the proceeds of the sale of such lands, to the compromise of a claim against the county. State ex rel. v. Co. Ct., 51 Mo. 82; Railroad v. Wayne Co., 125 Mo. 351; Sturgeon v. Hampton, 88 Mo. 212, 213. (6) County courts are not the general agents of the counties or of the State, but their powers are limited to those set out in the statutes. Whenever they step outside of and

beyond this statutory authority, their acts are void.   Sturgeon v. Hampton, 88 Mo. 213.   (7) There is no fund known as the swamp land fund.   The money, arising from the sale of swamp lands becomes a part of the public school fund of the county.   The warrant set out in the alternative writ was, therefore, invalid and unenforcible.   R. S. 1899, sec. 8199.   (8) If, as the return alleges, there are no funds out of which this warrant can be paid, the peremptory writ should be denied. State ex rel. v. Holladay, 65 Mo. 76.

ROBINSON, J.—This is an original proceeding instituted in this court on the relation of George B. Wheeler for a peremptory mandamus to compel respondent as treasurer of Butler county to pay relator the amount of a certain county warrant drawn by the county court of said county upon the swamp land fund.

The allegations of the alternative writ are as follows:

"That on and prior to the twenty-ninth day of June, 1899, George B. Wheeler held a claim against the county of Butler, in the State of Missouri, for the sum of $3,000, together with interest thereon for several years, for money paid by him to the county of Butler on account of swamp lands of said county, and which said sum of money was, by the order and direction of the county court of said county, paid into the treasury of said county, and placed to the credit of the swamp land fund of said county, and thereby said sum of money so paid by this relator into the treasury of said county became and was a part of the swamp land fund of said county.

"That on the twenty-ninth day of June, 1899, he presented said claim to the county court, and said county court on said twenty-ninth day of June, duly audited said account, and by an order of the county court, duly entered of record in the records of said court, did find and determine that the relator

herein was entitled to have said sum of money with interest thereon returned and refunded to him, and by order duly entered in its records did order and direct the clerk of said court to issue and deliver to the relator a warrant in due form directing the treasurer of said county to pay to the said George B. Wheeler the sum of $3,900 out of any money in his hands appropriated for swamp land purposes, and on the twenty-ninth day of June, 1899, the clerk of said county court did, in pursuance of said order of the county court, issue and deliver to the relator herein, said warrant as he was ordered and directed by said county court to do. Which said warrant is as follows:

" 'Treasurer of Butler County.

" 'No. 454.                                                     $3,900

" 'Pay to Geo. B. Wheeler, three thousand nine hundred dollars out of any money in the treasury appropriated for swamp land fund. Given at the court house in Poplar Bluff, Missouri, this twenty-ninth day of June, 1899.

" 'By order of the county court.

" 'H. S. Baker, President.

" 'Attest: Geo. C. Orchard, Clerk.'

"That subsequent thereto, and about the first day of July, 1899, this relator duly presented said warrant to the treasurer of said county, and the respondent as such treasurer refused to pay the same, alleging as a reason therefor that he did not know whether he had to pay the same or not, and saying that he wanted to take further counsel in relation thereto. That thereupon the relator herein demanded of respondent, as such county treasurer, that he register said warrant and indorse thereon the fact of such presentation, and that payment thereof was refused, because he had no money in his hands with which to pay the same. That respondent as such county treasurer refused to comply with the demand to have said warrant registered, giving as a reason therefor that he could not do that be-

cause he had not the money with which to pay said warrant should he decide to do so.    And this relator says that he has at divers times since the first day of July, 1899, demanded of respondent as such treasurer that he pay said warrant, but that he has at all times refused to comply with such demand or pay said warrant.

"Relator says that for many years, both prior and subsequent to the issuing of said warrant as aforesaid, the county court of said county has in the exercise of its discretion, kept and maintained a fund in the hands of the treasurer of the said county known and designated as the Swamp Land Fund, upon which warrants were drawn in payment of all accounts due and owing by said county on account of its swamp lands.

"That on the twenty-ninth day of June, 1899, and at all times since, and now, there was and is in the hands of the respondent as such treasurer money belonging to said swamp land fund, sufficient to pay said warrant as well as all other warrants of prior issue and presentation drawn on said swamp land fund, and it becomes and was the duty of the respondent as such treasurer to pay said warrant when presented to him for payment, and that his said acts in so refusing to pay said warrant, were wrongful and illegal, and in violation of the duties of respondent as such county treasurer.    That by reason of said wrongful and illegal acts of said respondent as such county treasurer, this relator has been prevented from collecting and receiving the said sum of money so due from said county of Butler to him.

"That this relator is wholly without remedy except by the writ of mandamus."

The return of respondent to the alternative writ, after admitting that he is and ever since the first of January, 1899, has been treasurer of Butler county, proceeds as follows:

"That on the twenty-first day of June, 1894, the county

court of Butler county accepted a bid therefor, made by relator to the said county court, to purchase of said county all of the swamp and what is known as the 'railroad' lands of Butler county, at the sum and price of $1.65 per acre and that said bid was accepted on the express conditions that the said Wheeler pay the sum of $3,000 to the county treasurer of Butler county within five days of said date as a partial payment on said lands, which said sum should be forfeited to the county if said Wheeler should fail or refuse to pay the full or entire amount for all of said lands, thereafter to be ascertained according to a proposition made by Wheeler and filed by him with the county clerk on the sixteenth day of June, 1894. It was thereupon ordered by the said county court that said Wheeler enter into a written contract with the county of Butler for the faithful performance of the contract as set forth in the proposition of June 16, 1894, and that said written contract together with the receipt of the treasurer of Butler county for the sum of $3,000 be filed with the clerk of said county court within sixty days thereafter.

"That afterwards, at the August term, 1894, of said court and on the seventeenth day of August, 1894, the county court of said county ordered that W. C. Graddy be appointed agent for and in behalf of said Butler county to enter into and sign in duplicate a contract for the sale of Butler county swamp and overflow lands to George B. Wheeler of Poplar Bluff, Missouri, and in connection with H. M. Phillips, the county attorney, make an examination and comparison of abstracts of said lands.

"And afterwards, at said August term, 1894, of said court and on the second day of October, 1894, there was filed in said court articles of agreement purporting to have been made and entered into by and between said W. C. Graddy and George B. Wheeler, on the fifteenth day of August, 1894, reciting that

said Wheeler did on the sixteenth day of June, 1894, propose
in writing to said court to purchase all lands owned by said
county commonly known as swamp lands, and did propose to
pay for said lands the sum of $1.65 an acre, and that should
his proposition be accepted, to pay into the county treasurer the
sum of $3,000 as first payment on said lands, and to pay the
balance of the purchase price in ninety days thereafter or
sooner, if abstract of said land be made by said Wheeler by an
abstractor, and that the abstract could be examined by said
court and did propose to include in said proposition all lands
known as railroad lands in said county, and that the county
court of said county had accepted said proposition with the
express condition that the said Wheeler should pay the sum of
$3,000 to the county treasurer within five days from the date
of order as a partial payment on said lands, which sum was to
be forfeited by said Wheeler, should he fail or refuse to pay
the amount ascertained to be due according to his contract of
June 16, 1894; and it was ordered by said court on the
twentieth day of June that said Wheeler enter into a written
contract with said county for the faithful performance of his
contract of June 16, 1894.   That Wheeler had paid said sum
to the treasurer and filed his receipt with the clerk of said
court.   It then purported to sell to the said Wheeler for
the price of $1.65 per acre all the swamp and wet or over-
flowed lands now owned by Butler county and heretofore
pretended to be conveyed to Chas. W. Addy as com-
missioner of Butler county, to the St. Louis, Iron Mountain
& Southern Railroad Company, by certain commissioner's deed
recorded in the office of recorder of deeds within and for
the county of Butler, in deed book "J," pages 612, 613, 614,
wherein is set forth and described 53,977.23 acres of land;
also by certain commissioner's deed bearing date December 22,
1874, and recorded in the office of the recorder of deeds of said

Butler county, in deed record "J," at pages 611, 612, wherein is set forth and described 3,959.27 acres of land, and also all the lands owned by said Butler county and commonly known as the swamp or overflow lands, and it was further recited in said articles of agreement that said Wheeler was to furnish at his expense a perfect and complete set of abstracts of all the lands within ninety days from the fifteenth day of September, 1894, to the county of Butler, and also pay said county whatever reasonable expenses said county should incur in the examination of abstracts and in ascertaining the exact number of acres of land owned by said county and that said Wheeler was to pay the treasurer within five months from the twenty-first day of July, 1894, the full amount of the balance of the purchase price of said lands.

"It is further set forth that upon the fulfillment of this agreement and the performance of the conditions set forth by the said Wheeler at the time and in the manner and the full payment of purchase price of the land, then said court through its proper officers should make and deliver to said Wheeler a patent to the lands, and that on failure of said Wheeler to do and perform said agreement the county might elect to consider itself released and discharged from all liability on any of the covenants specified to be done on its part, and that the said partial payment of $3,000 already paid by said Wheeler into the county treasury, should be deemed forfeited without further notice as liquidated damages for the non-performance of the contract.

"On the twenty-first of December, 1894, another and further agreement between Graddy and Wheeler was filed in the court which provided that the compliance with the agreement heretofore made be postponed until such time as the title to the lands be judicially determined.

"At the February term, 1895, of the said county court, and

on the ninth day of April, 1895, said contract was by the county court of said county cancelled for the reason that said Wheeler had failed and neglected to comply with his said contract and it was declared that the contract was cancelled and rescinded.

"That afterwards, on the twenty-ninth day of June, 1899, the said Wheeler submitted to the county court of said county a proposition to compromise a suit which he had instituted against said county of Butler to recover $50,000 as damages which he alleged he had sustained by reason of the cancellation of said contract, set out as having been entered into between himself and said county on the fifteenth day of July, 1894, in which he agreed to release the county from all claims and demands which he had against it, for such damages, for the sum of $25,000, and the return to him of $3,000 as partial payment on the lands which he had paid, and further agreed to purchase certain swamp lands aggregating 19,987.98 acres at the price of $1.25 an acre, and the amount thereof to be deducted from the $25,000; and on the same day the county court accepted said proposition and spread upon the record of said court an order to that effect, and selling the said lands to said Wheeler on such terms, and directing the clerk to issue a patent therefor to said Wheeler, and afterwards on the same date caused the following to be entered of record:

" 'In the matter of Geo. B. Wheeler, warrant for $3,900.

" 'It is ordered by the court that the clerk issue to George B. Wheeler a warrant on the treasurer payable out of the swamp land fund for the sum of $3,900.'

"All of which will more fully appear from a certified copy of the record herewith filed and asked to be taken as a part of this return.

"Respondent further says that there is no money in the treasury of said county, out of which said warrant could be

paid; that said warrant was issued without authority of law and is void.    That there is no such fund known to the law as the swamp land fund.

"Respondent having fully answered, asks to be discharged with his costs."

The relator thereupon moved for a peremptory writ notwithstanding the respondent's return.

For the purpose of considering the motion, which may be regarded somewhat in the nature of a demurrer, all averments of facts sufficiently well pleaded in the return, will, under our practice, be taken as admitted.

Eliminating the conclusions of law, and matters not well pleaded, the correctness of which the motion does not admit, and eliminating also all redundant, immaterial, and irrelevant averments (with which the return abounds), the material facts set up in the return to justify respondent's action in refusing to pay the warrant in question when the same was presented to him for payment, the truth of which the motion concedes, are in substance:    That on August 15, 1894, the relator entered into a contract with the county court of Butler county for the purchase of certain swamp lands, and paid the sum of $3,000 to apply on the purchase price thereof.    That by the terms of said contract the relator was to forfeit the amount so paid in case he failed to comply with his contract.    That in December, following, the county court and relator made a supplemental contract in reference to the sale of these lands, whereby, in view of certain litigation and other complications which had arisen in the meantime, touching the title of such land, and the consequent uncertainty as to just what land the county court did own, it was mutually agreed between the relator and the county court, that the performance of the contract of August 15, should be postponed till such time as the title thereto should be judicially determined.    And that on April 9, 1895, the county

court cancelled and rescinded the contract without, however, having the title to these lands judicially settled or determined. Afterwards, the relator commenced an action against Butler county to recover damages by reason of the recision and cancellation of said contract, which resulted in the relator accepting a conveyance from said county of certain swamp lands, and the promise of a warrant for the return of the purchase money so paid by him. Thereupon, the county court made an order of record directing the county clerk to issue a warrant to relator for $3,900, being the amount of money paid into the county treasury by the relator in 1894, in compliance with the contract, together with interest thereon at the rate of six per cent per annum from the time of such payment.

It will be observed that the return does not deny the issuing of the warrant against the swamp land fund, nor that at the time the same was presented to respondent for payment there was not money enough in such fund to have paid said warrant and all other unpaid warrants presented for payment. It is true the return alleges that there is no money in the treasury out of which the warrant could be paid, but this is not a denial of the distinct affirmative allegation of the alternative writ: "That on the 29th day of June, 1899, and at all times since and now, there was and is, in the hands of the said W. B. Adams as such treasurer of said county, money belonging to the said swamp land fund, amply sufficient to pay the said warrant as well as all other warrants of prior issue and presentation drawn on said swamp land fund." These were all averments of fact, upon which respondent could have tendered an issue by his return.

Under our practice act every material allegation of the alternative writ not controverted by the return must be taken as true. Where, as in the case at bar, the allegations of the alternative writ are not specially denied, but the respondent states other facts inconsistent with those set up by the relator, this will

not be deemed a denial. Merely making a counter statement or giving a different version of the matter from that contained in the alternative writ, is not specifically denying such allegations. [Knapp, Stout & Co. v. St. Louis, 156 Mo. l. c. 352; Green & Meyer's Pleading and Practice, secs. 390 and 791.]

Having failed to deny the allegations of the writ with respect to the availability of funds, respondent can not, therefore, now say there are no funds in his hands applicable to the payment of the warrant in question.

Respondent is also in error in his contention that relator has another remedy, and therefore mandamus will not lie.

It is the well-settled doctrine of this State that county treasurers are simply ministerial officers and can be compelled to perform their duties. As was said by Judge BLISS in State ex rel. Thomas v. Treasurer of Callaway County, 43 Mo. l. c. 230, "there is no doubt of the jurisdiction of this court by mandamus against county treasurers who refuse to pay claims properly audited." To the same effect are the cases of State ex rel Jordon v. Haynes, 72 Mo. 378; People et al. v. Lawrence, 6 Hill 244; Baker v. Johnson, 41 Maine 15.

It is not perceived wherein the case of Andrew County ex rel. v. Schell, 135 Mo. 31, cited by respondent, applies to the altered facts of this case. The rule announced in that case is without application here. If, therefore, the issuing of the warrant described in the alternative writ was within the scope and authority of the county court, the respondent being simply a ministerial officer of the county, confessedly having money enough in his hands belonging to the swamp land fund with which to pay said warrant and all unpaid warrants of prior presentation drawn against such fund, then it was his plain duty to have paid the same.

Before discussing this branch of the case, however, we will notice the suggestion contained in respondent's brief that there

is no such fund as the swamp land fund known to the law. In support of his position counsel cites section 8199, Revised Statutes 1899, which provides that the net proceeds arising from the sale of swamp lands, after deducting the expenses of draining and reclaiming the same, should be paid into the county treasury, and become a part of the public school fund of the county. We fail to discover any application of that section to this point. The allegations of the alternative writ are that for many years, both prior and subsequent to the issuing of the warrant, the county court of Butler county has kept and maintained a fund in the hands of the treasury of the said county known as the Swamp Land Fund, against which warrants were drawn in payment of all accounts due and owing by said county on account of its swamp lands. As already seen, in failing to deny these affirmative allegations, the return clearly operates as an implied admission of the truth thereof. Apart, however, from any question of the sufficiency of the pleadings, this point is settled adversely to respondent in State ex rel. v. Bollinger County Court, 48 Mo. 475, which was a proceeding by mandamus to compel the county court to provide for the payment of certain warrants drawn upon the swamp land fund.

This court, in that case, not only recognized the right to maintain a "swamp land fund," but ordered a peremptory writ to compel the county court to provide funds·for the payment of warrants legally drawn against such special fund. This opinion was written after the enactment of the section above referred to.

Looking then at the nature of the relator's claim, can it be said as contended by respondent, that the action of the county court in issuing the warrant here under consideration, was beyond the authority of the county court, or to put it differently, does the return disclose any reason whatever why this warrant should not be paid ?

Under our statute prescribing the conditions·upon which county courts may cancel contracts for the sale of swamp lands, it is provided as follows:

Section 8213, Revised Statutes 1899: "In every case where persons have become purchasers of swamp and overflowed lands in the several counties of the State, on credit, . . . . and shall, by death or otherwise, become unable to pay for the same, the county court of such county, on the application of such purchaser, or, in case of his death, of his or her legal representatives, is hereby authorized to cancel the contract in whole or in part upon these conditions: Said court shall not, in any case, pay back any money or interest that has been paid upon said contract"—

By section 8214, it is provided: "If the purchaser of any swamp lands has absented himself from the State, so that no process of law can be served upon him, the county court of the county where the swamp land lies may, upon the application of any one who may have become surety for the purchase of the said land, cancel the contract on such terms as may be deemed equitable."

By the terms of section 8215, it is provided: "Whenever the county courts of this State shall have sold swamp or overflowed lands to which they are unable to make good and sufficient title, the said courts are hereby authorized and empowered, with the consent of the purchaser, or, in case of his or her death or absence from the State, then with the consent of his or her sureties or legal representatives, to cancel said contract."

These sections prescribe all the conditions under which the county court is authorized to cancel contracts for the sale of swamp lands. Counsel for respondent contends that the contract was cancelled under the authority of section 8213 which precludes the repayment of the purchase money paid upon the

contract.   In order to authorize the court to proceed under that section it must appear affirmatively: first, that relator was unable to carry out his contract, and pay the balance of the purchase money; second, that the contract was rescinded on application of relator.   It does not appear from the return that either of these prerequisites have been complied with in this case.   No sufficient showing is made here of any conditions which would authorize the county court to cancel the contract under that section.

Manifestly there is nothing in the statute prohibiting the county court from refunding payment of the $3,000 made by relator where the contract has been cancelled under circumstances like the present.   It is conceded that relator did not apply to the county court for a cancellation of his contract, nor was it shown that he was dead and the application therefor made by his legal representatives.   Neither is it averred that he was insolvent or had in any wise become unable to comply with his contract to pay for the land.   So far as the return shows the relator seems to have been in the strict performance of the original contract as modified and extended by the supplemental agreement of December 31, 1894, when the county arbitrarily stepped in and cancelled the contract of its own motion.

While it is true the return set up that the contract was cancelled because relator failed to comply with its terms, this allegation, however, is a conclusion of law, pure and simple, which is not admitted by the motion.   It will not do to permit the respondent to say that the contract "was cancelled for the reason that the relator had failed to comply with his contract," etc., without specifying what relator did or omitted to do in that regard.   Such a procedure would be violative of every principle of good pleading, and substitute the pleader's judgment for that of the court.   In speaking of this precise ques-

tion in Knapp, Stout & Co. v. St. Louis, 156 Mo. l. c. 353, it was said: "Under our practice act the pleader is required to make a simple statement of the facts constituting his grievance, to which he then prays an application of law; not his conclusion from these facts, or his judgment on the result."

The return shows, however, that in December, 1894, another contract was entered into between relator and the county court whereby the performance of the contract of August 15 was postponed until such time as the title to the land could be judicially determined, but there is no averment in the return or from which it could be inferred that the title to these lands had been judicially determined in June, 1895, when the rescinding order was made. In view of the contract of December 31, extending the time for the performance of relator's original contract until the title to the land had been judicially determined, and the absence of any showing that the title to these lands had been judicially determined as provided by the latter contract, it is clear that there was no breach of the contract on the part of the relator. The action of the county court, therefore, in cancelling the contract before a judicial ascertainment of the title was had, can not, we think, be justified; consequently, there was no forfeiture of the purchase money, and the county court was not prohibited from refunding the same. The county having failed to comply with its contract in reference to the sale of these lands, we do not see any good reason why the purchase money paid by relator, with interest thereon, should not, in the circumstances of this case, be refunded.

On respondent's own showing it appears that by reason of certain litigation and other complications touching the title, the county could not give a good title. Indeed it was not known at the time the rescinding order was made just what land the county did own.

It would be a remarkable proposition that while relator

was in the performance of his contract, as extended and modified by the agreement of December 31, the county court could spread upon its record a solemn order cancelling the contract and convey the same land to other parties, thus rendering it impossible for the county to comply with its contract, without refunding the money received from the relator thereon. Having cancelled.the contract without fault on the part of the relator the county, under every principle of right and justice, was bound to refund the purchase money received thereon.

It is next insisted that as the.money was derived from the sale of swamp lands the county court had no authority to order the same paid to relator in settlement of a general claim against the county for damages growing out of the breach of a contract for the sale of those lands, because such money constituted a trust fund for the benefit of the public schools and therefore could not lawfully be diverted to any other purpose.

This is a clear misapprehension of the statute, as said in the case of Brown Estate Co. v. Wayne County, 123 Mo. 464. Primarily these lands are held for the purpose of drainage and reclamation, and all the interest the common schools could have therein would be to such of the proceeds thereof as may be left after the payment of the expenses of such reclamation.

For the purpose of this case it is wholly immaterial what fund the proceeds arising from the sale of these lands belonged to. The fact is the county received relator's money and placed it to the credit of the swamp land fund. Certainly there is nothing in the statute, to prevent the county court in refunding this money to draw a warrant against the fund that received it. If the relator is entitled to a return of his purchase money, it would be perfectly proper that the fund receiving the same should be drawn upon for that purpose; otherwise, the county court through inadvertence might so place funds as to put it

Vol 161 mo—24

beyond its power to return the same. We have examined the authorities cited by respondent and do not find that they militate against the views herein expressed.

Counsel for respondent also contends that the warrant in question was the result of a compromise between relator and Butler county in June, 1899, of a general claim for damages against the county, which was clearly beyond the power of the court, or in other words that the warrant was not based upon a right to the money existing prior to June 29, 1894, but was based upon rights growing out of a compromise between relator and the county court on June 29, 1899, and that the relator's right to this money does not, therefore, rest upon any of the transactions of 1894, but must stand or fall by the compromise agreement.

The error of this position is manifest, when we take into consideration the fact that the money paid by relator to the county was paid under the contract of August 16, 1894, as modified and extended by the supplemental agreement of December 31, of that year. The county court having of its own volition cancelled the contract before the title to the lands had been settled, was at least bound to refund the purchase money received thereon, which, however, it declined to do until after the relator commenced a suit against the county for $50,000 damages growing out of the rescission of the contract. During the pendency of this action relator made a proposition to the county court to settle his claim against the county touching the partial payment made on the contract, and also the damages alleged to have been sustained by reason of the cancellation thereof. This proposition was in two parts: First, that the sum of $3,000 paid by relator under the contract, together with interest thereon, should be refunded to him; second, relator then proposed to take $25,000 in satisfaction of his claim for damages, and to accept a conveyance of certain swamp lands at $1.25 per acre in payment thereof. Afterwards, on June 29,

1899, the county court accepted both propositions and spread upon its records an order directing the county clerk to issue the relator the warrant in question for the $3,000, so paid by him, together with interest thereon from the date of such payment at the rate of six per cent per annum, and issued relator a patent for such land. The facts above detailed make it clear that there is no merit in respondent's contention, and show beyond question that the warrant was properly issued in payment of an indebtedness existing prior to the twenty-ninth of June, 1899.

It is unnecessary to discuss the question as to whether or not the county court was acting beyond its power in conveying these lands to the relator in settlement of his claim for damages. That question has nothing whatever to do with relator's right to have the money paid upon the contract returned to him, and does not affect his right to payment of the warrant in question.

We are of the opinion that the action of the county court in issuing the warrant was clearly within the scope of its powers, and shall therefore direct the issue of a peremptory writ.

*Burgess, C. J., Sherwood, Brace, Valliant* and *Gantt, JJ.,* concur; *Marshall, J.,* absent.