UNITED STATES v. NASHVILLE, C. & ST. L. RY.

(District Court, M. D. Tennessee. Nashville Division. September 4, 1914.)

No. 1138.

1. MANDAMUS (§ 165*)—HEARING—MOTION FOR ISSUANCE OF WRIT.
    Where a motion for the issuance of a writ of mandamus followed literally the prayer of the petition, and was heard on the petition and supporting affidavit, the answer, and a copy of the order of the Interstate Commerce Commission, to enforce which the writ was desired, the motion was equivalent to a demurrer to the answer, and admitted the truth of all averments of fact well pleaded therein.
    [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 360½–364; Dec. Dig. § 165.*]

2. COURTS (§ 265*)—FEDERAL COURTS—ORIGINAL JURISDICTION—ISSUANCE OF MANDAMUS.
    In the absence of statutory authority, the District Courts of the United States cannot issue mandamus as an original and independent remedy, but are limited to its use as a process in the enforcement of rights in aid of a jurisdiction previously acquired by the court for other purposes.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 802–805, 1353; Dec. Dig. § 265.*]

3. STATUTES (§ 23*)—SENATE RESOLUTIONS—FORCE AND EFFECT—INTERSTATE COMMERCE COMMISSION—AUTHORITY.
    A resolution of the United States Senate, adopted November 6, 1913, directing the Interstate Commerce Commission to investigate and report to the Senate the relations existing between defendant and another railroad, and the relations and conduct of those and other railroads in respect to various matters set out in the resolution, including the matter of free passes issued by defendant after January 1, 1911, to public offi-

cials or at their request, etc., not having been concurred in by the House of Representatives nor approved by the President, was not a law of the United States, and did not enlarge the jurisdiction of the Commission to inspect the records and correspondence of defendant company, conferred by the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]).

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 26, 27; Dec. Dig. § 23.*]

4. MANDAMUS (§ 129*) — INTERSTATE COMMERCE COMMISSION — COMPELLING CARRIER TO PRODUCE CORRESPONDENCE—STATUTES.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 12. 24 Stat. 383 (U. S. Comp. St. 1901, p. 3162), confers on the Interstate Commerce Commission the right to obtain information from carriers engaged in interstate commerce and to compel by subpoena witnesses to testify and produce documentary evidence. Section 20, as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1911, p. 1307), authorizes the Commission to require sworn reports of the receipts and expenditures of carriers with reference to specified matters, including information relating to rates or regulations concerning fares or freights, or agreements, arrangements, or contracts affecting the same, and to require specific answers to questions, and provides that the Commission shall have direct access to the accounts, records. and memoranda kept by the carriers and may inspect the same through examiners. It also provides that the Commission, in its discretion, may prescribe forms for any and all accounts, records, and memoranda to be kept by carriers, subject to the provisions of the act, which the Commission's agents and examiners are authorized to inspect, etc. *Held,* that the "accounts, records, and memoranda" of carriers to which the Commission is given access and the right of examination by section 20 are those, the form of which the Commission is, by the preceding sentence, authorized to prescribe, and that the phrase "accounts, records, and memoranda," as used in such section, does not relate to or include correspondence or other original papers or documents in the possession of carriers, constituting part of their business acts and transactions, which correspondence the carriers are not required to disclose to the Commission's examiners, and an inspection of which can be obtained by the Commission only by subpoena in the instances and for the purposes within the provisions of section 12.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 264; Dec. Dig. § 129.*]

On motion by the United States for a writ of mandamus against the Nashville, Chattanooga & St. Louis Railway to compel defendant to disclose to examiners employed by the Interstate Commerce Commission correspondence received by defendant and copies of correspondence sent by it and the indices pertaining to the same, etc. Writ denied.

Abram M. Tillman, former U. S. Atty., and Lee Douglas, U. S. Atty., both of Nashville, Tenn., for petitioner.

P. J. Farrell, of Washington, D. C., for Interstate Commerce Commission.

Claude Waller, of Nashville, Tenn., W. B. Lamb, of Fayetteville, Tenn., and Helm Bruce, of Louisville, Ky., for defendant.

SANFORD, District Judge. The plaintiff's verified petition for a writ of mandamus alleged that this suit was instituted by the district attorney, under the direction of the Attorney General and at the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

request of the Interstate Commerce Commission; that the defendant is a common carrier engaged in interstate commerce and subject to the Interstate Commerce Act; that the Commission is, under sections 12 and 20 of said Act, as amended, vested with certain powers and charged with certain duties as set forth in the petition, including, under section 20, the right, at all times, to have "access to all accounts, records and memoranda" kept by carriers subject to the Act and to "employ special agents, or examiners who shall have authority under the order of the Commission to inspect and examine" any and all of the same; that on November 6, 1913, the Senate of the United States adopted a certain resolution set forth in the petition (which fully appears in United States v. Louisville Railroad [D. C.] 212 Fed. 486, 489), whereby, in thirteen separate paragraphs, the Commission was directed to investigate and report to the Senate as to the relations between the defendant and the Louisville & Nashville Railroad and the relation and conduct of these and other railroads in respect to various matters set out in the resolution, including, in the last paragraph, the number of free passes issued by the defendant, since January 1, 1911, to public officials, or at their request, with the total mileage and money value thereof; that the Commission for the purpose of enabling it to perform the duties imposed upon it by the Act had appointed two special agents and examiners and "duly authorized them to inspect the accounts, records and memoranda" of the defendant; that on February 6, 1914, the Commission, through one of said agents and examiners, had applied to the defendant "for access to and opportunity to examine the accounts, records and memoranda kept by said defendant, including the correspondence received by said defendant and copies of correspondence sent by said defendant and also the indices pertaining to said correspondence and copies; that the defendant had failed and refused to give the Commission or its said agent and examiner, access to or opportunity to examine the same, "namely, said correspondence and copies of correspondence and indexes thereto;" that in many instances the only detailed account, record and memorandum of a transaction relating to the defendant's business as a common carrier kept by it, is contained in the said correspondence and copies; and that "in pursuance of said Commission's duty under the law, and in obedience to said resolution of the Senate hereinabove set out, and to enable said Commission to perform the functions for which it was created," it was the duty of the Commission to obtain access to and examine through said agents and examiners all of said accounts, records and memoranda, including said correspondence, copies and indexes, and the duty of the defendant to give it and them such access and opportunity of inspection. Wherefore, the plaintiff prayed the court to issue a writ of mandamus commanding the defendant to comply with said provisions of the Interstate Commerce Act, and to give the Commission, its agents and examiners, access to its accounts, records and memoranda, including said correspondence, copies and indexes, and opportunity to examine the same, and "also opportunity to inspect and examine any and all other accounts, records and memoranda, including correspondence, copies of

correspondence, indexes to such correspondence and other indexes kept by said defendant," and for general relief.

The affidavit of said special agent and examiner, which was filed with the petition, set forth the demand made by him upon the defendant for access to and opportunity to examine its accounts, records and memoranda, including said correspondence, copies and indexes, and the refusal of the defendant to give him, as such special agent and examiner, either access to or opportunity to inspect and examine the same, "namely, said correspondence and copies of correspondence and indexes thereto."

The defendant's verified answer alleged that on November 10, 1913, the Commission had passed an order, set forth in the petition, instituting an investigation concerning the matters set forth in said Senate resolution, which was served upon the defendant and "is the order of the Commission for the examination mentioned in the petition"; that about February 2, 1914, two examiners of the Commission had reported at the defendant's offices and were given access to its "accounts, records and memoranda" as contemplated in section 20 of the Interstate Commerce Act; that they subsequently demanded the privilege of examining all papers relating to the issuance of free transportation, and, while the defendant did not recognize their authority to inspect said papers, it had nevertheless complied with said demand and furnished them the list of those to whom annual passes had been issued, the stubs showing to whom trip passes had been issued, and all correspondence relating thereto; that about February 6, 1914, one of said examiners applied to the defendant for complete and unlimited access to and opportunity to examine the general correspondence files and indexes pertaining thereto, in the offices of the President and General Manager, the Vice-President and Traffic Manager, and other officers and agents of the defendant; that this application and demand was refused; that said examiner made no demand for any special or particular files of correspondence, but his demand was a general one to have complete, full and unlimited access to the correspondence files and their indices, and this was the only demand of said examiner which was refused by defendant; that the "accounts, records and memoranda" to which the examiners were given access under section 20 of the Act did not embrace such correspondence or indices; that the defendant's general correspondence files contained private and confidential communications between its various officers and agents relative to its internal affairs, its proposed constructions and extensions, and a variety of other subjects of a private and confidential nature which did not in any way relate to the provisions of the Interstate Commerce Act or any other Act as to whose enforcement any duty had been imposed upon the Commission, and also contained confidential, private and privileged communications between the defendant and its attorneys; that the only detailed account, record and memorandum of a transaction relative to its business as a common carrier was not in many instances contained in such correspondence and copies; that it was not the duty of the Commission to obtain access to or examine, through its agents and examiners, defend-

ant's said correspondence, copies of correspondence and indices and not the duty of the defendant to give said examiners access thereto; that the first twelve paragraphs of said Senate resolution, as embraced in the aforesaid order of the Commission, involve matters wholly foreign to the authority, duties and obligations of the Commission under the Interstate Commerce Act, and are beyond the purview and jurisdiction of the Commission and pertain wholly to the enforcement of the Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), as to which there is no duty imposed upon the Commission; that four of said paragraphs pertain to matters as to which the defendant is in no way concerned or connected; that as to the inquiries made in the thirteenth paragraph in regard to passes, the defendant had furnished information to the examiners, as stated; that section 20 of the Interstate Commerce Commission Act authorized the Commission to prescribe the forms of any and all "accounts, records and memoranda" to be kept by carriers subject thereto, and that, under said provision, the Commission had prescribed a uniform system of railway accounting, including orders as to the Classification of Operating Expenses, of Expenditures for Road and Equipment, of Revenues and Expenses for outside Operations, of Locomotive Miles, Car Miles and Train Miles, and of Expenditures for Additions and Betterments, and Forms of General Balance Sheet Statement and of Income and Profit and Loss Statement, and had thereby prescribed in detail a general accounting system for all carriers subject to the Act; that the defendant had complied with all the forms that had been prescribed by the Commission, and the Commission and its examiners had had full and complete access to same; that the Commission had never undertaken to prescribe any forms for correspondence between officials of the various departments of the defendant, or between such officials and officials of other carriers or the general public, and that obviously forms for correspondence could not be prescribed; that said Senate resolution could not confer upon the Commission or its examiners any authority which the Commission did not have under the Interstate Commerce Act and its amendments; that the demand for a general inspection of all the defendant's indices and correspondence was in violation of the provision of the Fourth Amendment to the Constitution of the United States against unreasonable searches and seizures; and that if the Interstate Commerce Act should be construed as conferring upon the Commission and its examiners the authority to have access to all such correspondence files and indices, it is unconstitutional and in violation of said amendment.

[1] The motion for the issuance of a writ of mandamus, which follows literally the prayer of the petition, was heard upon the petition and supporting affidavit, the answer, and a copy of the Commission's order of November 10, 1913, instituting an investigation of the matters set forth in the Senate resolution. Being thus heard upon the pleadings the motion is equivalent to a demurrer to the answer, and admits, for present purposes, the truth of all averments of fact well pleaded therein. Merrill v. County Treasurer, 61 Mich. 95, 97, 27 N. W. 866; Beard v. Board of Supervisors, 51 Miss. 542, 544; Ward v.

Flood, 48 Cal. 36, 46, 17 Am. Rep. 405; State v. Adams, 161 Mo. 349, 362, 61 S. W. 894; Harris v. State, 96 Tenn. 496, 513, 34 S. W. 1017; High, Extra. Leg. Rem. (3d Ed.) § 527, p. 490. And see Matter of Steinway, 159 N. Y. 250, 254, 53 N. E. 1103, 45 L. R. A. 461.

It is to be noted, at the outset, that neither the petition nor supporting affidavit alleges, in effect, any refusal by the defendant to give the examiner access to any of its "accounts, records and memoranda" other than correspondence received, copies of correspondence sent and the indices thereto. And since the answer alleges that the Commission and its examiners have had complete access to all the defendant's "accounts, records and memoranda" kept in accordance with the forms prescribed by the Commission, and that the examiners have also been furnished with all correspondence relating to the issuance of passes, and that the only demand made by the examiner which the defendant refused was a "general" demand to have "complete, full and unlimited access" to its general correspondence files and the indices thereto (a fact which was not denied at the hearing), it is clear that the sole issue now presented is as to the plaintiff's right to a writ of mandamus compelling the defendant to allow such unlimited access to its general correspondence.

[2] It is well settled that in the absence of statutory authority, the district courts of the United States cannot issue a writ of mandamus, as an original and independent remedy, and are limited to its use as a process in the enforcement of rights in aid of a jurisdiction previously acquired by the court for other purposes. Heine v. Levee Commissioners, 19 Wall. 655, 660, 22 L. Ed. 223; Smith v. Bourbon County, 127 U. S. 105, 112, 8 Sup. Ct. 1043, 32 L. Ed. 73; United States v. Louisville Railroad (D. C.) 212 Fed. 492. The plaintiff's right to the issuance of the writ in the present case must therefore rest, if it exists at all, upon the provision in section 20 of the Interstate Commerce Act that the district courts of the United States "shall have jurisdiction, upon the application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with or a violation of any of the provisions of said Act to Regulate Commerce or of any Act supplementary thereto or amendatory thereof by any common carrier, to issue a writ or writs of mandamus commanding such common carrier to comply with the provisions of said Acts, or any of them."

[3] It is earnestly insisted by the defendant, in limine, that under the general averments of the petition (which nowhere specifically alleges that the Commission has by any "order" authorized its agents and examiners to inspect the defendant's accounts, records and memoranda for any purpose coming within the provisions of the Interstate Commerce Act, or states the specific objects of the examination of the defendant's correspondence sought to be made by the examiners), and in view of the allegation in the answer that the order of the Commission instituting an investigation into the matters set forth in the Senate resolution (which does not direct any investiga-

tion by means of examiners), it must be held, under the rule of pleadings above stated, that the sole order of the Commission authorizing the examiners to inspect the defendant's correspondence is one made for the purpose of carrying out the investigation directed by the Senate resolution, and that as this resolution is not a law of the United States and does not enlarge in any manner the authority or jurisdiction of the Commission under the Interstate Commerce Act, the defendant's refusal to permit 'an examination of its correspondence under such order and for such purpose would not, in any event, be a violation of any provision of the Act, and that, hence, all other questions aside, there would be no authority under section 20 of the Act for the issuance of a writ of mandamus as prayed. Without, however, determining this question, which depends primarily upon a narrow question of pleading, whose solution is rendered unsatisfactory by the somewhat general and vague nature of the allegations of both the petition and answer, I think it proper, in view of the importance of the question involved on the merits of the case, to proceed to its consideration, upon the assumption, for present purposes, that, upon this motion, it sufficiently appears that the examiner to whom access to the defendant's general correspondence was refused, had, by proper order of the Commission, been duly authorized to inspect the accounts, records and memoranda of the defendant for the double purpose of performing the general duties devolving upon the Commission under the Interstate Commerce Act and of making the specific investigation directed by the Senate resolution. It is clear, however, that the Senate resolution, which does not appear either to have been concurred in by the House of Representatives or approved by the President, is not a law of the United States, and does not, as was conceded at the hearing, enlarge in any manner the authority or jurisdiction of the Commission under the Interstate Commerce Act. United States v. Louisville Railroad (D. C.) 212 Fed. 492. Obviously, therefore, in so far as the examination sought to be made by the Commission for the purpose of carrying out the investigation directed by the Senate resolution did not fall within the general authority of the Commission, independently of such resolution, the defendant's refusal to permit an examination of its correspondence for such purpose, would not be a failure to comply with any provision of the Interstate Commerce Act or a violation thereof, or constitute a ground for the issuance of the writ of mandamus herein. United States v. Louisville Railroad (D. C.) 212 Fed. 492. And, in its ultimate analysis, the plaintiff's right to the issuance of the writ must hence, in this aspect of the case, depend upon the question whether, under the Interstate Commerce Act, the Commission is authorized in the general performance of its duties to obtain, through its duly authorized examiners, access to the general correspondence of the defendant and opportunity to examine same, and, consequently, whether in denying such access and opportunity for examination, the defendant has violated any provisions of said Act. If so, independently of other considerations, the plaintiff is entitled to the writ of mandamus; otherwise not.

[4] The provisions of sections 12 and 20 of the Interstate Commerce Act, in so far as pertinent to the consideration of this question, are, in substance, as follows:

Section 12 of the Act, as amended, provides:  •

"That the Commission  *  *  *  shall have authority to inquire into the management of the business of all common carriers subject to the provisions of this Act, and shall keep itself informed as to the manner and method in which the same is conducted, and shall have the right to obtain from such common carriers full and complete information necessary to enable the Commission to perform the duties and carry out the objects for which it was created; and the Commission is hereby authorized and required to execute and enforce the provisions of this Act; and, upon the request of the Commission, it shall be the duty of any district attorney of the United States to whom the Commission may apply to institute in the proper court and to prosecute under the direction of the Attorney General of the United States all necessary proceedings for the enforcement  *  *  *  of this Act and for the punishment of all violations thereof  *  *  * ;  and for the purposes of this Act the Commission shall have the power to require, by subpœna, the attendance and testimony of witnesses and the production of all books, tariffs, contracts, agreements, and documents relating to any matter under investigation.  *  *  *  And in case of disobedience to a subpœna the Commission  *  *  *  may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of books, papers, and documents under the provisions of this section."

Section 20 of the Act, as amended, authorized the Commission to require annual reports, under oath, from all common carriers subject to the Act, which shall show in detail their receipts and expenditures and various other specified matters and "also contain such information in relation to rates or regulations concerning fares or freights, or agreements, arrangements, or contracts affecting the same as the Commission may require"; to "prescribe the manner in which such reports shall be made and to require from such carriers specific answers to all questions upon which the Commission may need information: and also to require any or all of said carriers, by general or special orders, to file periodical or special reports, under oath, "concerning any matters about which the Commission is authorized or required by this or any other law to inquire or to keep itself informed or which it is required to enforce"; the failure to file said annual reports, or any such periodical or special report or to make specific answer to any such authorized question, within the time required, subjecting the carrier to a forfeiture of one hundred dollars for each day of default.

Section 20 (as amended by the Hepburn Act of June 29, 1906, c. 3591, 34 Stat. 584, 593) further provides that "the Commission may, in its discretion, for the purpose of enabling it the better to carry out the purposes of this Act, prescribe a period of time within which all common carriers subject to the provisions of this Act shall have, as near as may be, a uniform system of accounts, and the manner in which such accounts shall be kept.  *  *  *  The Commission may, in its discretion, prescribe the forms of any and all accounts, records and memoranda to be kept by carriers subject to the provisions of this Act, including the accounts, records and memoranda of the move-

ments of traffic, as well as the receipts and expenditures of moneys. The Commission shall at all times have access to all accounts, records and memoranda kept by carriers subject to this Act, and it shall be unlawful for such carriers to keep any other accounts, records or memoranda than those prescribed or approved by the Commission; and it may employ special agents or examiners, who shall have authority under the order of the Commission to inspect and examine any and all accounts, records and memoranda kept by such carriers. * * * In case of failure or refusal on the part of any such carrier * * * to keep such accounts, records, and memoranda on the books and in the manner prescribed by the Commission, or to submit such accounts, records, and memoranda as are kept to the inspection of the Commission or any of its authorized agents or examiners," such carrier shall forfeit five hundred dollars for each day of the continuance of such offense. "Any person who shall willfully make any false entry in the accounts of any book of accounts or in any record or memoranda kept by a carrier, or who shall willfully destroy, mutilate, alter, or * * * falsify the record of any such account, record, or memoranda, or who shall willfully neglect or fail to make full, true, and correct entries in such accounts, records, or memoranda of all facts and transactions appertaining to the carrier's business, or shall keep any other accounts, records, or memoranda than those prescribed or approved by the Commission, shall be deemed guilty of a misdemeanor" and shall be subject to a fine of from one thousand to five thousand dollars or imprisonment from one to three years, or both; "provided" (as amended by the Act of February 25, 1909, c. 193, 35 Stat. 649), "that the Commission may at its discretion issue orders specifying such operating, accounting, or financial papers, records, books, blanks, tickets, stubs, or documents of carriers which may, after a reasonable time, be destroyed, and prescribing the length of time such books, papers, or documents shall be preserved."

It will be observed that these sections deal with several separate and distinct matters, namely, the right of the Commission, under section 12, to obtain "information" from the carriers, and to compel, by subpœna, witnesses to testify and produce documentary evidence; its right, under section 20, to require the carriers to file annual, periodical or special reports concerning matters within the scope of the Commission's duties, and to require specific answers to questions; and, finally, under section 20, its right, to have direct access to the "accounts, records and memoranda" kept by the carriers and to inspect the same through its examiners. All of these provisions, however, except the last, relate either to information furnished to the Commission by the carriers, through reports or answers, or to information obtained by it through the process of subpœna; and only the last relates to its right of direct access to records in the possession of the carriers for the purpose of an independent examination. The present case involves only the extent of the last mentioned right; and, the crucial question is as to the true scope and meaning of the words "accounts, records and memoranda" as used in this clause of section 20 of the Act.

The provisions of this section of the Act in reference to the "accounts, records and memoranda" to be kept by common carriers are to be construed in the light of the well-settled principles governing the construction of statutes in derogation of the' common law and of a penal nature; and they are to be read not only in connection with the other provisions of the Act, above mentioned, in reference to the obtaining of information by the Commission through other methods than direct examination, in which broad language is used in marked contrast to the limited phrase "accounts, records and memoranda," but also, in such manner that, if reasonably possible, these words may be given the same meaning wherever used, and a harmonious and consistent construction given to the several provisions of the Act in reference thereto.

After careful consideration, I have reached the conclusion that the "accounts, records and memoranda" of common carriers to which the Commission is given the right of access and examination are those whose form it is, by the sentence immediately preceding, authorized to prescribe; and that the phrase "accounts, records and memoranda" as used in this section of the Act does not relate to correspondence or other original papers or documents in the possession of the carriers, constituting part of their business acts and transactions, but to the records of such acts and transactions, including the movements of traffic as well as accounts of receipts and expenditures, which the carriers are required to enter "on the books and in the manner" and forms which the Commission may prescribe, constituting book entries of their acts and transactions, in the nature of a general system of accounting, which shall be at all times subject to inspection and examination by the Commission.

In Harriman v. United States, 211 U. S. 407, 421, 29 Sup. Ct. 115, 53 L. Ed. 253, such "accounts, records and memoranda" are referred to, in general terms, as "accounts"; in Interstate Commission v. Goodrich Transit Co., 224 U. S. 194, 32 Sup. Ct. 436, 56 L. Ed. 729, they are variously designated as "a system of accounting" provided in the orders of the Commission (p. 211), "accounts to be kept in a uniform way and to be open to the inspection of the Commission" (p. 211), "accounts" (p. 211) and a "general form of accounting" (p. 212); and in Kansas City Railway v. United States, 231 U. S. 423, 34 Sup. Ct. 125, 131 (58 L. Ed. 296), reference is made to the "declared object of standardizing railroad accounts" (p. 440) and to the purpose manifested by Congress "to standardize and render uniform the accounts of the different carriers both with respect to matters that entered into property and the improvements thereof, on the one hand, and the current operations of the company, on the other" (p. 442).

It further appears that all of the provisions in question in reference to the "accounts, records and memoranda" of common carriers, which were incorporated by the Act of 1906 as an amendment to the Interstate Commerce Act, are derived, in literal and exact terms, from the draft of a bill submitted to Congress by the Commission, in 1905, the passage of which it recommended; and that in recommending to Congress the adoption of this amendment the Commission entitled that

"portion of its report dealing with this matter "*Examination of Books of Account*," and under this heading, said:

"An efficient means of discovering illegal practices would be found, as we believe, in authority to prescribe the form in which books of account shall be kept by railways, with the right on the part of the Commission to examine such books at any and all times through expert accountants. This recommendation has been urged upon the attention of Congress in previous reports, and we earnestly renew it at this time. Probably no one thing would go further than this toward the detection and punishment of rebates or kindred wrong-doing." (Nineteenth Annual Report of Interstate Commerce Commission, 1905, at pp. 11, 177 and 182.)

I cannot believe that Congress in adopting the amendment thus recommended for the purpose of giving the Commission authority "to prescribe the form in which books of accounts shall be kept by railways" and to examine "such books" at all times through expert accountants, contemplated that such amendment would give the Commission the right of free and unlimited access at all times, to the entire general correspondence of the railways, upon all subjects whatsoever, however remote from the purposes of the Act or foreign to the province of the Commission, and including, it is to be noted, letters sent to the carriers by their correspondents, as to which the Commission could obviously prescribe no form. There are in the Act as thus amended, no words indicating this intention on the part of Congress, such as a general provision giving the Commission the right to inspect all correspondence of carriers subject to the Act, or all their books, papers and documents, or other apt words of general and unrestricted import; and nothing, in short, that in my opinion, indicates or suggests such intention. I am therefore constrained to conclude that such right of examination of the general correspondence of the carriers is not conferred upon the Commission by section 20 of this Act; although the inspection thereof may be obtained by the Commission under writ of subpœna in the instances and for the purposes coming within the provisions of section 12 of the Act. See Harriman v. United States, 211 U. S. 407, 29 Sup. Ct. 115, 53 L. Ed. 253. And while apparently the effect of the proviso incorporated in section 20 of the Act by the Act of 1909, is to confer upon the Commission, by implication, the additional right to examine such "records, books, blanks, tickets, stubs or documents" of a carrier, relating to "operating, accounting, or financial" matters, as it may, by orders require to be preserved, this obviously does not confer upon the Commission any right to inspect a carrier's general correspondence which is neither alleged nor shown to contain any accounts of this character.

It therefore follows that, in the instant case, the defendant in refusing the examiner access to its general correspondence files, as demanded by him, neither failed to comply with, nor violated, any provision of the Interstate Commerce Act or of its amendments; and hence the plaintiff is, all other considerations aside, not entitled under the Act, to the writ of mandamus sought.

Being of opinion that, for this reason, the plaintiff is not entitled to the issuance of a writ of mandamus to compel the inspection of the defendant's correspondence, it is hence unnecessary to determine

whether, if otherwise entitled, such writ should, in the instant case, be denied, in the exercise of the discretion vested in the court in the granting of a writ of this character, either upon the ground that the examination appears to be sought, in part at least, for an unauthorized purpose, that is, the investigation of many matters set forth in the Senate resolution, which, it is insisted, are entirely beyond the scope of the Commission's authority; or because of the broad and sweeping character of the demand made upon the defendant, overstepping, it is insisted, the limits of a reasonable search. See 26 Cyc. 147, 150; United States v. Louisville Railroad (D. C.) 212 Fed. 494.

For the reasons stated, however, an order will be entered denying the plaintiff's motion for the issuance of the writ.