THE STATE ex rel. RANDOLPH COUNTY v. WILLIAM P. EVANS, State Superintendent of Public Schools.

In Banc, February 9, 1912.

1. SCHOOLS: Enumeration: Collateral Attack. The enumeration of children between the ages of six and twenty years within a school district, made by the board of directors in the manner prescribed by statute, is their official act, and cannot be collaterally attacked; for instance, the State Superintendent cannot attack the truthfulness or correctness of that enumeration by determining that the enumeration is too large by a certain definite number and by reducing proportionately the amount of the State school moneys the county is to have. The official enumeration made by the board cannot be attacked or called in question except by a direct proceeding brought for the specific purpose of showing its inaccuracy or falsity. Until the enumeration is corrected by a direct proceeding, the State Superintendent must take it as the basis for a proper distribution of the State school funds.

Held, by BROWN, J., dissenting, that school enumerations are not judicial determinations, and the State Superintendent

State ex rel. v. Evans.

can, at the time of apportioning to the counties their share of the State school moneys, dispute the correctness of a current enumeration of a district intentionally false, and require it to correct the error before permitting it to share in the fund. The law simply commands the school board to "take or cause to be taken, and forwarded to the county clerk, an enumeration," and its accuracy is verified only by the oath of the enumerator, and on no sound theory can it be classified as a judicial determination.

2. ————: ————: **Distribution of State Moneys: State Super-intendent: Correction.** As to the annual distribution of the State school moneys among the counties of the State the duties of the State Superintendent are purely ministerial. No statute authorizes him to revise and correct enumerations made by school boards on the ground of fraud. Fraudulent enumerations may be investigated by the proper tribunal, and corrected; but the State Superintendent is not that tribunal.

3. ————: ————: ————: ————: **Supervision Over Educational Funds: Sec. 10920, R. S. 1909.** The words of Sec. 10920, R. S. 1909, declaring that the State Superintendent "shall exercise such supervision over the educational funds of the State as may be necessary to secure their safety and correct application and distribution according to law," do not empower him to set aside or revise the findings of a district school board as to the number of children of school age in the district. They relate back and refer to his duties under section 10823, namely, to correct any error made in the apportionment of the next preceding year. In other words, the section only authorizes him to correct his own mistakes. The language falls far short of investing him with power to purge enumerations of fraud. *Held*, by BROWN, J., dissenting, that this statute empowers the State Superintendent to challenge any enumeration be believes to be incorrect or fraudulent.

4. ————: ————: ————: ————: **Withholding for One Year Overapportionment of Previous Years: Sec. 10823, R. S. 1909.** The State Superintendent cannot undertake to adjust an over-apportionment to a school district for previous years by direct-ing the county clerk to withhold any State moneys from that district for the current year. He cannot assume that the school enumeration in a certain city district has been too large for four years, and that the district by reason of that fact has received more than it was entitled to for the first three years, and try to equalize the matter by directing the county clerk to distribute all the moneys apportioned to the county for the current year to the other districts of the county. Section 10823, authorizing him to correct any error in the apportionment for the next preceding year, invests him with no such equity powers.

State ex rel. v. Evans.

ON MOTION TO STRIKE OUT.

MOTION SUSTAINED.

*F. E. Murrell* and *Willard P. Cave* for relator.

(1) The writ of mandamus is the proper remedy to compel officers of the State whose duties are ministerial to perform such duties. State ex rel. v. Secretary of State, 33 Mo. 293; State ex rel. v. McGrath, 92 Mo. 355; State ex rel. v. Lesueur, 103 Mo. 262; State ex rel. v. Cook, 174 Mo. 100; State ex rel. v. Gordon, 231 Mo. 547; State ex rel. v. Roach, 230 Mo. 408. (2) The duties of the State Superintendent of Public Schools in making the apportionment of school moneys among the various counties of the State, as required by Sec. 10822, R. S. 1909, are purely ministerial. R. S. 1909, secs. 10822, 10827, 10790, 11008; Merrill on Mandamus, sec. 230; 26 Cyc. 160; State ex rel. v. Hudson, 239 Mo. 265; State ex rel. v. Meier, 143 Mo. 447; State ex rel. v. Cook, 174 Mo. 118; State ex rel. v. Cheetham, 63 Pac. (Wash.) 552; Jones v. Holzapfel, 68 Pac. (Okla.) 515; Haight v. Day, 1 John's Ch. 18. (3) The enumerations made by the various school districts are quasi-judicial findings, based upon evidence taken by the enumerators and made under oath by such enumerators, and are not subject to attack except in direct proceedings, in a court having jurisdiction, to hear and try charges made as to the correctness of these findings. State ex rel. v. County Court, 137 Mo. App. 698; Township v. Carey, 27 N. J. L. 377; Young v. State Supt., 138 Ind. 206; People ex rel. v. Town Auditors, 126 N. Y. 528; State ex rel. v. Sherman, 35 Atl. (N. J.) 1060. (4) The power of the State Superintendent to make corrections as to preceding apportionments, is contained in Sec. 10823, R. S. 1909. This section doesn't grant to him any judicial powers, but limits his authority to cases where, by clerical or sim-

ilar mistake, this money has been paid to a county other than the one that should have been paid. The courts cannot supply omissions in legislation and give to the State Superintendent judicial powers. Sutherland on Stat. Const., sec. 235; State ex rel. v. Alt, 224 Mo. 513; State ex rel. v. School Dist., 90 Mo. 398; State ex rel. v. Cunningham, 153 Mo. 643; State v. Heman, 70 Mo. 441.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle* and *John M. Dawson,* Assistant Attorneys-General for respondent.

(1) Section 10920, when construed in the light of constitutional and other statutory provisions relating to this subject, confers upon respondent the power which he seeks to exercise and warrants him in taking notice of the falsity of and correcting enumerations certified to him. State ex rel. v. City of Knoxville, 90 S. W. 289. A careful consideration of our laws governing this subject discloses that unless the State Superintendent of Public Schools is authorized to correct false enumerations and to see that the aforesaid controlling thought is carried into force, then no such authority is conferred upon any officer, and it is within the power of a designing enumerator, or school district, to pad their lists as they see fit, and thus lead to injustice and absurd consequences. In construing laws, the first and last duty of courts is to ascertain the intention of the lawmaker, and, in doing this, they must be governed by well settled rules applicable alike to a construction of the Constitution and statutes. All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, absurd consequences or a defeat of a legislative purpose. It will always, therefore, be presumed that the Legislature intended that its language should be so construed as to avoid

results of this character.  By section 10920 the State
Superintendent of Public Schools is required to exer-
cise supervision over the educational funds of the.
State, and to do whatever is necessary to secure their
safety and correct application and distribution, as de-
creed by law.  In the case of State ex rel. v. City of
Knoxville, supra, the city of Knoxville, by reason of
its enumerators having made false reports as to the
scholastic population, whereby that city and its schools
received from the State fund moneys in excess of the
amount to which it was entitled, the Supreme Court of
Tennessee held that the State was entitled to recover
the excessive amounts so received and expendd by the
city.  The opinion in that case is an able and elab-
orate discussion of the principal question involved
here, and we could well rest this cause upon what is
there said.  See, also, State ex rel. v. Superintendent,
36 La. Ann. 241; Louisville School Board v. Super-
intendent, 109 Ky. 9; Same, 102 Ky. 394; School Dist.
v. Patterson, 10 Mont. 17; State ex rel. v. Perkins, 139
Mo. 118; State ex rel. v. Cartwright, 122 Mo. 267;
Burkharth v. Stephens, 117 Mo. App. 425; Knox Co.
v. Hunolt, 110 Mo. 73.  (2)  Section 10823, Revised
Statutes 1909, is an additional and direct authority
for respondent's action.  (3) The enumerations re-
lied upon by relator are nullities, and, according to
Sec. 10822, R. S. 1909, it is entitled to no portion of
the school funds.  If relator's enumerations are of the
nature and were taken for the fraudulent purpose al-
leged in respondent's return, they are nullities and
equivalent to no enumeration.  It is fundamental that
where a thing is permeated with the fraud of those
who are in duty bound, as public officers, to act in good
faith, the same is a nullity.  State v. Cartwright, 122
Mo. 267; R. S. 1909, sec. 10822.

GRAVES, J.—Action by mandamus to compel
the respondent to apportion to relator the full sum

of $16,811.35 of the State's school moneys. In the alternative writ it is charged that the county of Randolph for the year 1911 had a school population (persons between six and twenty years of age) of 9269, as shown by the enumerations of the several school districts in said county. The vital portion of the alternative writ reads:

"That by section 10822 of the Revised Statutes of Missouri for the year 1909 it is made the duty of the State Superintendent of Schools, during the month of July, 1911, to apportion the State public school funds applied for the benefit of the public schools among the different counties, from the enumerations and returns made to his office, by the county clerks of the various counties in this State, and to certify the amount so apportioned to the State Auditor and also to the county clerk of each county, including said county of Randolph. That by section 10822 it is made the duty of the county clerk to apportion said sum so certified to him among the several school districts in his county, according to the enumeration of children of school age in said districts as made to him and to his said office as county clerk. That although such is the plain duty of the said William P. Evans as such State Superintendent of Public Schools, and although such return has been so made to him, the said William P. Evans, as State Superintendent, by the county clerk of Randolph county, said William P. Evans, acting as State Superintendent of Public Schools, arbitrarily threatens to deduct from said enumeration of persons of school age in said Randolph county a large number of such persons, to-wit, 4655, and threatens to withhold a large portion of the said moneys from said county of Randolph, to-wit, the sum of $8442.86, and the said William P. Evans arbitrarily threatens to apportion to the said Randolph county as its portion of the State school funds only the sum of $8368.49 upon a basis of only 4614 children of school age in said Randolph

county, when said enumerations and returns show
that the said county has for the year 1911 9269 school
children between the ages of six and twenty years;
and that the said William P. Evans has further arbi-
trarily and without authority of law notified the clerk
of said Randolph county to cut out and refuse to make
any apportionment whatever to the school districts
of the city of Moberly, in said Randolph county, mean-
ing and intending thereby to cut off such schools of
the city of Moberly from any of the State school funds
to be apportioned and distributed for the year 1911.''

The real amount of dispute between relator and
respondent is the sum of $8442.86; which is the amount
going to the Moberly School District in said county.

Relator in his return charges that the enumera-
tion in said Moberly School District was fraudulently
taken and returned, and that as thus taken and re-
turned contained 1014 fraudulent and fictitious names.
By paragraphs 7 to 14 of the return are set up the
special·defenses as above indicated. We need set out
but one paragraph to present the matter. Paragraph
7 of the return reads:

''Respondent, for further return, says that in
the year 1911 the board of directors of the school dis-
trict of the city of Moberly, said district being located
wholly within the county of Randolph, caused to be
taken and forwarded to the county clerk of that county
what purported to be a true and correct enumeration
of the names of all persons over six and under twenty
years of age who were resident at that time within
said district, and caused the same in due time to be
certified to the county clerk of that county as the enu-
meration of persons of school age within said district,
and that on or about the 31st day of July, 1911, the
county clerk of said Randolph county made out and
transmitted to respondent an abstract of the returns
of the school districts, cities and towns of said Ran-
dolph county, as made to him, and included in and as

part of his said abstract of returns the enumeration made and returned to him by the school district of the city of Moberly, an aggregate enumeration of 4655 persons between the ages of six and twenty years who were resident, during the year 1911, within said district of the city of Moberly, and in addition thereto there was an aggregate enumeration of 4614 persons between the school ages of six and twenty years who were resident within said districts, cities and towns in said county, other than the school district of the city of Moberly, making a total enumeration of 9269 persons of school age within said county, but respondent states and alleges the facts to be that the said enumeration for the school district of the city of Moberly, so made and taken as aforesaid, and purporting to be a true, correct and lawful enumeration of persons of school age resident within the school district of the city of Moberly, and upon which the county clerk based his abstract of returns to respondent, in so far as the same related to the school district of the city of Moberly, was incorrect, false and illegal, and contained the names of numerous persons who were not between the ages of six and twenty years, and who did not reside within said school district, and the names of many persons who were dead, and further contained many false and fictitious names, and the names of many persons who were not entitled to be enumerated as resident of said school district; that said enumeration contained 1014 of such names and persons who were not, for the reasons herein stated, entitled to be enumerated as persons of school age within said school district, and that, as a matter of fact, there was at that time, and is at this time, but 3641 persons of school age resident within said district, and who were and are entitled to be enumerated as such. Respondent further states that he is unable to set out the names of the persons who were so, as aforesaid, wrongfully and illegally enumerated as persons of school age res-

ident within said district, for the reason that said names are unknown to him, and relator has refused to furnish them.''

In other paragraphs, the respondent charges like frauds as to the several enumerations of this particular school district for the years 1908, 1909 and 1910, and claims that it is and was his duty not only to withhold from said Moberly School District the sum which would go to it from the alleged fraudulent and fictitious 1014 names on said list for the year 1911, but likewise to withhold from it out of the money really due to it for 1911 all moneys which it received by reason of the alleged frauds in the three previous years. To so do would leave the school district without any sum due for 1911.

Relator has filed a motion to strike out these paragraphs of the return, numbered 7 to 14, inclusive, on grounds therein stated. We need not note all of these, but only such as may be necessary. This we will do in the course of the opinion.

I. The year 1911, and the preceding years of 1908, 1909 and 1910 in our judgment, stand upon a different basis under the statutory law, but there is one question raised by the motion to strike out which is common to all. This question we take first. In the motion it is urged that the verity of the enumerations for the Moberly School District cannot be attacked in this proceeding. That such would be a collateral attack upon the judgment of a judicial or quasi-judicial body. To our mind the term ''quasi-judicial body'' is more in line. In this contention we think the relator is right. In the case at bar there is no question that the enumeration returns as made by the school directors and the county clerk are regular upon their face, and this being true, such returns cannot be attacked in this a collateral proceeding. In this State, as well as in many others, school enumerations are the acts

of duly and legally constituted bodies, i. e., the boards of directors of school districts. The duty is imposed by statute upon these boards, and the school census or these enumerations are the result of action by the boards. Section 10790, Revised Statutes 1909, so far as material, reads:

"The board of directors of each district shall, between the thirtieth day of April and the fifteenth day of May of each year, take or cause to be taken, and forwarded to the county clerk, an enumeration of the names of all persons over six and under twenty years of age, resident within the district, designating male and female, white and colored, and age of each, together with the full name of the parent or guardian of each child enumerated."

These enumerations when completed are the official acts of the board of directors, and as such cannot be attacked in a collateral proceeding, such as is the case at bar. An enumeration list is but the annual school census. Enumerators may be prosecuted criminally for a false enumeration, and parents and guardians may likewise be prosecuted for giving false information. The whole proceeding is carefully hedged by the law, and after it is taken it is returned by the board of directors to the county clerk, and then becomes the basis for the distribution of the school funds due from the State. The point we make is that it is the act of the board of directors under the law. That under the law such board has many things to consider in determining what shall be the school census or enumeration. Among other things the question of residence has to be determined. The finding of the board cannot be questioned in a collateral proceeding, but like a judgment, can only be impeached in a direct proceeding for that purpose.

Speaking on the subject of a city census, ELLISON, J., of the Kansas City Court of Appeals, in the case

of State ex rel. v. Cass County Court, 137 Mo. App. l. c. 708, says:

"Notwithstanding the return of respondents shows the proceedings of the county court and of the city of Pleasant Hill as herein indicated, yet it is insisted they are not concluded by the census, or the legal results which ordinarily follow it, for the reason that they allege in the return that the census in point of fact was fraudulently taken, that is, it was padded with names of persons not inhabitants and that in reality there were not twenty-five hundred inhabitants of the city. The answer made by relator to this position is that the proceeding for taking the census, and the taking thereof, were had in and before a duly constituted body or tribunal especially empowered by law to do so, and that, as such, the result is not subject to collateral attack. Relator's view is sustained by a long line of authority to be found in his brief. Indeed, it is a fundamental rule of law that the acts of a body entrusted by law with the performance of certain specified proceedings which on their face are regularly taken, are not subject to attack except in a direct proceeding for that purpose. This rule applies as rigidly to special and inferior bodies as it does to superior courts. In most instances presumptions upholding proceedings in superior courts will not aid omissions in proceedings of those of inferior grade, but where the record of the latter, on its face, is regular, it is not subject to collateral attack. In such instance the matter of power and dignity of the body does not enter into the question. [State ex rel. v. Wilson, 216 Mo. 301; Lingo v. Burford, 112 Mo. 149; Jeffries v. Wright, 51 Mo. 215; State v. Evans, 83 Mo. 319; Union Depot Co. v. Frederick, 117 Mo. 148; Light and Water Co. v. Lebanon, 163 Mo. 259; 1 Black on Judgments, sec. 273; Freeman on Judgments, sec. 523; Van Fleet on Collateral Attack, secs. 62, 468.]

"Therefore, respondent's allegation of fraud in the census was the assertion of matter which could not be made an issue in the present case. It was foreign matter, good enough in a case where such charge could be investigated, but which should not find place here where those concerned in such issue are not parties. It follows that the allegation of fraud in the census was not confessed by the relator's motion for judgment. Matter not well pleaded need not be denied and is not confessed. [State ex rel. v. Adams, 161 Mo. 349, 363.]"

The statute empowers the board of aldermen or city council to take or cause to be taken a city census. In both cases, the statute imposes the duty upon a named body. In the one, it is the school board, in the other it is the city council. When completed, one becomes the school census for the district, and the other becomes the census for the city or town. One is no more subject to collateral attack than the other

We are cited, however, to the earlier case of State ex rel. v. Cartwright, 122 Mo. App. 257. In that case the lower court did permit evidence to show that an enumeration of colored pupils was fraudulently taken, and in discussing the question in the Court of Appeals some language is used by JOHNSON, J., which lends color to respondent's contention here. However, in that very case, ELLISON, J., made the point we make in the case at bar. At the close of the opinion, 122 Mo. App. l. c. 268, it is said: "Judge ELLISON is of the opinion that no fraud was shown. and that if there had been, the present action is not the proper mode of reaching it."

When the Cass County case in 137 Mo. App. reached that court, the Cartwright case, supra, was urged as authority for the position that fraud could be shown as the respondent at bar now urges. From this position the Kansas City Court of Appeals evidently receded in the later case, if in fact it had ever

intended to announce the doctrine in the Cartwright case. Upon this subject, in State ex rel. v. Cass County Court, 137 Mo. App. l. c. 709, it is further said:

"But it is said that fraud in taking a census has been allowed to be shown in a collateral proceeding such as this, and the cases of State ex rel. v. Wilder, 211 Mo. 305, and State ex rel. v. Cartwright, 122 Mo. App. 257, are cited in support of the statement. We cannot see where the former has any application whatever. There was no proof in that case of a census, while here each party sets forth the census in the pleading. In the latter case there had been two enumerations of school children by the school district clerk and the contest was as to which the school board should recognize. The first one was the subsisting enumeration when the right to the school was demanded and when the alternative writ of mandamus was applied for and granted. The majority of the court held that the first one taken was the subsisting enumeration which had been acted on theretofore by the board and that the latter was a pretense to avoid the first after the accruing of the right to the school. While here, as we have just stated, the one census, regular upon its face, is conceded by the pleadings."

The Cass County case is one by an undivided court, and although the Cartwright case is urged upon the court, it is distinguished and not followed.

The exact question came up in New Jersey some years ago, Township of Morris v. Carey, 27 N. J. L. 377, and an elaborate discussion of the case law is therein found from the pen of VREDENBURGH, J. There the court reviews case after case, and reached the conclusion that school trustees in making and returning school enumerations acted judicially, and their acts could not be attacked for fraud, except in a direct proceeding. In other words, that in a collateral proceeding, as is the one we now have before us, such enumerations are final and conclusive. The New Jersey

law required enumerations to be made as required by our law, and for the same purpose, i. e., as the basis of distributing school funds. In the New Jersey case, supra, the parties offered to prove fraud in the enumeration list. After showing by the case law that the work of the school trustees in taking and making a school enumeration was in a sense judicial, the learned justice says:

"The whole school money of the State is thus passed down to the township collectors, and they are ordered to pay it over to the town superintendents; and then the town superintendents are ordered, by the statute (Nix. Dig. 735, sec. 17), to apportion the whole money so received among the several school districts, in the ratio of the number of children capable of attending school between the ages of five and eighteen, and to pay it over, on the orders of the trustees, to the teachers; so that it will be perceived that the distribution of all the school funds, both State and township, in every county, township, and district of the State, is based upon this ascertaining of the children by the district trustees. The whole movement depends upon the finality of this ascertainment. If this return be in its nature judicial, the county collectors, the township collectors, the town superintendents, can safely pay over the funds, respectively, as commanded by the statute. They perform merely ministerial functions, and are liable to indictment for not doing so; and the whole school system moves on harmoniously. If there be error in the ascertainment by the district trustees, so there may be error in even the highest tribunals; and probably no other tribunal could have been created by the Legislature to ascertain and adjudicate upon the children in each district having the requirements called for by the statute so appropriate as the district trustees. As regards fraud in the adjudication, that may also happen in the highest as well as the lowest tribunals; and the public, as

in other cases, must be protected by future legislation and by the authors being held responsible to the voice of public opinion and to the criminal law. At any rate, there must be a finality, as regards error and fraud, somewhere, and from the very nature of the thing, I do not see where the Legislature could have placed this adjudication more properly than where they have."

In the same case GREEN, C. J., uses this language: "I am also of opinion that the circuit court did not err in rejecting the evidence offered by the plaintiffs to prove that the list of children made out by the defendants, and returned to the town superintendent, was false and fraudulent, on the ground that the truth or falsehood of such return cannot be inquired into collaterally. Upon this point, I fully concur in the elaborate opinion of Mr. Justice VREDENBURGH."

In Indiana there is a statute like ours, requiring school trustees, or as we call them school directors, to make an enumeration, which like ours must be subscribed and sworn to. The enumeration so taken and proved had to be filed with the county superintendent instead of the county clerk as in this State. From the different district enumerations the county superintendent was required to make to the State Superintendent a county enumeration. In the case of Young, County Superintendent, etc. v. State ex rel. Morgan et al., 138 Ind. 206, we find that the county superintendent refused to make and certify the enumerations to the State Superintendent on grounds thus stated in the opinion:

"After filing these several reports, the appellees, as such school trustees, demanded of the appellant that he make out and forward to the State Superintendent the enumeration provided for by section 4431, R. S. 1881, which he refused to do, alleging as a reason for such refusal that the enumeration made by the appellees was not correct; that it contained many more

children than were entitled to school privileges in the city of Ft. Wayne, and claiming the right to employ a competent person to make a new enumeration. Upon such refusal, this action was commenced to compel the appellant by mandate to perform the duty enjoined upon him by the provisions of said section 4431.''

Section 4431 referred to above was the section requiring the county superintendent to make report to the State Superintendent. The court held that the county superintendent had to accept the enumeration which was duly returned by the trustees and had no power to investigate the alleged frauds.

In a later New Jersey case, State ex rel. v. Sherman, County Superintendent, 35 Atl. l. c. 1061, it is said: ''Moreover, the only evidence laid before or available to him of the 'last published school census' showed that Glen Ridge was a distinct school district, having 344 school children; and the mandate of the statute is explicit that he should make the apportionment according to that census. His duty was purely ministerial, and he could no more inquire into the legality of the constitution of the districts *than he could into the accuracy of the enumerations.* It is evident that such investigations would result only in a harmful disturbance of the system adopted for the support of the public schools.'' The italics are ours. In that case it was sought to have the county superintendent ignore a certain school district upon the ground of it being illegally organized.

If these enumerations are fraudulent no doubt they could be attacked and corrected in a proper action, but so long as they exist the State Superintendent cannot reach them in this collateral proceeding. Until they are corrected in a proper proceeding he must take them as a basis for a proper distribution of the school money. This view of course disposes of the enumerations for all the years, and in effect disposes of the case, but there are other matters urged

by the motion to strike out which we prefer to dis-
cuss, and these we take next.

II. But to my mind there is another reason why
the contention of respondent Evans cannot be sus-
tained. His duties as to the distribution of school
funds are purely ministerial. No statute authorizes
the State Superintendent to revise and correct enum-
erations on the ground of fraud. Such officer has been
furnished with no legal machinery by which he can
hold or have a hearing and adjudge the fact of fraud
or no fraud in enumeration returns. He is not em-
powered to bring the interested parties before him.
In fact the law makes no provision for him to make an
investigation of the question of fraud. As indicated
in the previous paragraph, I have no doubt that in
a proper proceeding before a proper tribunal, with
the proper parties before such tribunal, fraudulent
enumeration lists may be purged of fraud, but the
State Superintendent has not been constituted such a
tribunal by law.

Nor can this court try the issue of such fraud in
this collateral proceeding. It may be that the Legisla-
ture could invest the State Superintendent with pow-
ers in this regard, but up to this time it has not seen
fit so to do. The Legislature, no doubt, thought that
it had sufficiently hedged these enumerations from
fraud by the criminal proceedings which it authorized
and mentioned above.

The only statutes that are urged in support of
the respondent's contention of his right, we will dis-
cuss. These statutes are sections 10823 and 10920, Re-
vised Statutes 1909, and read as follows:

"Sec. 10823. The State Superintendent of Public
Schools is hereby authorized to correct any error made
in the apportionment of the public school funds among
the various counties of this State out of the public
school fund of the year next following the date when

such mistake was made, and the amount set apart to any county for the purpose of correcting an error shall be by him certified to the State Auditor and to the county clerk, and the State Auditor shall draw a warrant on the State Treasurer for the amount so certified in favor of the treasurer of said county, and the county clerk shall apportion said funds to the various districts in said county as the funds of the year in which said error occurred, and the county treasurer may pay outstanding warrants for teachers' wages issued during the school year in which said error occurred, not to exceed the correction made.

"Sec. 10920. He shall reside and the books and papers of his department shall be kept at the seat of government, where a suitable office shall be provided by the State, at which he shall give his attendance when not absent on public business. *He shall exercise such supervision over the educational funds of the State as may be necessary to secure their safety and correct application and distribution according to law.* He shall also have power to require of county clerks or treasurers, boards of education or other school officers, recorders and treasurers of cities, towns and villages, copies of all records by them required to be made, and all such other information in relation to the funds and condition of schools and the management thereof as may be deemed important; and he shall cause as many copies of the law relating to schools, with instructions for carrying into execution of such laws, to be printed into a separate volume and distributed to each county in the State, for the use of school officers therein, and all the blanks that may be necessary for the supply of all officers provided for by this chapter, as often as any change in said laws may be made of sufficient importance, in the opinion of the Superintendent to require republication and distribution thereof; and all moneys necessarily expended in performance of the duties required in this section shall be allowed by the

Auditor and paid out of the State Treasury. He shall also have authority to examine teachers and grant certificates of qualifications to those who pass a satisfactory examination, but the applicant shall not be charged any fee for such examination or certificate, nor shall the State Superintendent receive any fee or compensation therefor; and any person holding such certificate from him shall be permitted to teach without further examination from other authorized examiners. Said certificate may be revoked by the State Superintendent for incompetency, cruelty, immorality, drunkenness or neglect of duty.''

The first of these sections we will have use for under another point, but we cite it here for the purpose of showing all the powers granted to the State Superintendent as to the distribution of public funds. The latter section is the one chiefly relied upon, and we have italicized the clause from which power is sought. Under that clause can it be said that power is given the Superintendent to adjudge enumeration lists to be fraudulent? We think supervision over the educational funds does not lodge with him power to set aside the findings of the school board as to the number of school children in the district. Such statute may be broad enough for him to see that proceedings are instituted to correct alleged frauds in this regard, but we are not called upon to decide that question and do not decide it. To our minds, the words ''correct application and distribution according to law'' relates back and refers to his duties under section 10823, supra. We have shown that by other sections the Legislature had sought in specific language to obviate frauds in enumeration lists. It has provided for criminal prosecutions. Had the Legislature thought of conferring power upon the State Superintendent to purge enumeration lists of fraud, it no doubt would have done so by specific provision. The

240 Sup.—8

subject was in the legislative mind and action was taken thereon, but that action empowered the courts to hear and punish offenders, and not the State Superintendent to hear and adjudge the question of fraud. The Legislature no doubt thought that the courts of the different counties were amply able to take care of fraudulent enumerations. Courts are invested with the power to bring in proper parties and bring before it all the evidence, but no such power seems to have been given the State Superintendent. Before it can be said that the State Superintendent can pronounce an enumeration list fraudulent, specific authority for him to hear and determine that question should be found in the letter of the statute. As stated before the law has furnished to this officer no machinery by which this question of fraud can be investigated. The law does not authorize him to pass judgment thereon. Section 10823, supra, confers no such powers. The funds are apportioned by the State Superintendent. That section only authorizes him to correct his own mistakes, when he has apportioned to a county less than that which was due it. He does that by setting aside from all the funds a sufficient amount to correct his error of the year previous, and then proceeds to apportion among all the counties the remainder. This statute has no reference to such troubles as are now before us.

The duties of the State Superintendent under both of these statutes are purely ministerial. They do not authorize him to pass judgment upon the question of fraud in the enumeration lists.

III. It appears that the State Superintendent is refusing to pay to Randolph county any money for Moberly School District, because he avers that the surplus which it received for the years 1908, 1909 and 1910, equals all that it would be entitled to in 1911, under a proper enumeration for 1911, and the three

previous years. Grant it to be true that in the previous years the district had received more than it was entitled to, there is no warrant of law for the State Superintendent to correct or attempt to correct such error. Section 10823 refers to no such case, and this is his only warrant of authority. This money has been received and expended and it may be that by some equitable proceeding the status of the school district with reference thereto could be determined, but it can hardly be said that the State Superintendent has been clothed with the powers of courts of equity. As to these frauds, the State Superintendent is in legal effect rendering judgment against the district, issuing execution and then satisfying the execution and judgment. This, he cannot do. So that there is this additional reason as to why he should not withhold this particular portion of the fund in question.

Relator's motion to strike out should be sustained *in toto*, and it is so ordered. *Valliant, C. J., Woodson* and *Ferriss, JJ.*, concur; *Lamm, J.*, dissents; *Brown, J.*, dissents in opinion filed, in which *Kennish, J.*, concurs.

## DISSENTING OPINION.

BROWN, J.—I concur in the views expressed by my associate, Judge GRAVES, in the majority opinion, so far as that opinion announces the law to be that respondent as State Superintendent of Public Schools is without power to withhold current funds from a school district because such district has through an intentionally false enumeration obtained at a prior apportionment more money than its just share of the school funds of the State.

The claim which would arise in favor of the State against a school district by reason of money received by such district through a fraudulent enumeration, is of a strictly equitable nature, and the relator not being clothed with any equitable jurisdiction or power to

take testimony, would have no authority to adjudicate a matter of that kind.

When a ministerial officer is empowered to correct errors of some other officer, that power is usually construed to apply to clerical errors only. [Petition of Powers et al., 52 Mo. 218; Polk Co. v. Sherman, 99 Ia. 60.]

In my opinion the power conferred upon the respondent by section 10823, Revised Statutes 1909, to correct errors in the apportionment of former years, applies only to clerical errors made by the respondent himself, or to mistakes growing out of errors in enumerations certified to him and about which there is no controversy.

When a school district asserts that there is no error in its enumeration for former years (as in this case) the State Superintendent of Public Schools is powerless to act, even though such former enumerations were padded with fictitious names.

I dissent from that part of the majority opinion which holds that school enumerations are judicial determinations and that respondent cannot in this action dispute the correctness of the school enumeration of the Moberly School District taken and certified in the current year, 1911.

It is true that the duties of respondent are ministerial, but under section 10920, Revised Statutes 1909. he is expressly required to "exercise such supervision over the educational funds of the State as may be necessary to secure their safety and correct application and distribution according to law."

This section, in my judgment, empowers him to challenge any enumeration which he believes to be incorrect or fraudulent.

The case of State ex rel. v. Cass County, 137 Mo. App. l. c. 708, cited to support the doctrine that school enumerations are not subject to collateral attack, does not sustain the views expressed in the majority opin-

.ion.  The enumeration which the Kansas City Court of Appeals held could not be collaterally attacked in State ex rel. v. Cass County, supra, was taken by a legislative body, to-wit, a city council under section 7239, Revised Statutes 1909; and as the law required it to be spread upon the records of the city council, it clearly implied that the council should verify its accuracy before it became effective.  The taking of the census under said section 7239 was one step toward determining whether or not the city of Granby should be governed by the "Local Option Law."  Therefore, it may properly be classed as a legislative proceeding and the same favorable presumptions indulged in favor of its validity.  [Cox v. Mignery & Co., 126 Mo. App. 669.]

School enumerations stand on quite a different footing.  The law, section 10790, Revised Statutes 1909, does not require school boards to examine, approve or make a record of enumerations, but simply commands such boards to "take or cause to be taken, and forwarded to the county clerk an enumeration," etc.  The accuracy of a school enumeration is only verified by the oath of the enumerator, and on no sound theory can it be classified as a judicial determination.

To sustain the doctrine that school enumerations are judicial determinations and, therefore, not subject to collateral attack, the majority opinion cites the cases of Lingo v. Burford, 112 Mo. 149; Jeffries v. Wright, 51 Mo. 215; State v. Evans, 83 Mo. 319; Union Depot Co. v. Frederick, 117 Mo. 148, and Light and Water Co. v. Lebanon, 163 Mo. 259.

The case of Light and Water Co. v. Lebanon, supra, simply holds that the passage of an ordinance by a city council must be proven by the journals of such council, and cannot be established by parol evidence; and consequently, it does not in any manner support the views expressed in the majority opinion.

The case of Lingo v. Burford, supra, involves a collateral attack on the judgment of a county court establishing a public highway after due notice had been given of the proceeding to open such highway; and is therefore in no respect similar to an ex parte school enumeration..

Jeffries v. Wright, supra, involves an attempt to impeach the judgment of a justice of the peace by oral evidence that the return upon which it was based was false.

State v. Evans, supra, embraces a collateral attack upon a judgment of the county court granting a saloon license.

The case of Union Depot Co. v. Frederick, involves a collateral attack on a judgment of a circuit court in a condemnation proceeding; so that all these cases involve attacks upon proceedings distinctly judicial in their character; and, therefore, do not even tend to sustain the proposition that a school enumeration is a judicial determination.

The doctrine that school enumerations are judicial determinations appears to me to be largely a judicial fiction. The duties of school enumerators are entirely ministerial and the duties of the school boards are administrative and not judicial in their nature. It is true that school enumerators and school boards act under an official oath, but the same may be said of every other officer in the State, however humble.

Judicial duties are those which are ordinarily vested in the judicial department of the State. The proceedings of administrative boards are not judicial in their nature. [State v. Hathaway, 115 Mo. 36; State ex rel. v. Ryan, 182 Mo. 349; 23 Cyc. 1613.]

In our own State, in the case of State ex rel. v. Cartwright, 122 Mo. App. 257, the correctness of a school enumeration was called in question in a proceeding by mandamus to compel the establishment of a separate school for children of African descent in a

district containing more than fifteen colored children of school age. One of the grounds upon which the writ was resisted was that the last enumeration showed only ten colored children of school age residing in said district; and in that case, the respondent, like the relator here, contended that no evidence could be received to contradict or show the falsity of the official enumeration. In deciding that case, the Kansas City Court of Appeals, in a well reasoned opinion, held that the correctness of the enumeration being challenged, it was competent to receive oral evidence to contradict it, and it being proven that many colored children residing in the district were fraudulently omitted from the enumeration, such enumeration was permeated with fraud, and constituted no defense to the action.

In my opinion, that decision is sound law, and if an enumeration may be attacked collaterally because the names of children of school age are fraudulently omitted therefrom, it must follow that the enumeration in the case at bar may be attacked on the ground that it is padded with fictitious names or contains the names of persons who should not have been included therein.

The case of Judges, etc., of Hickman County v. Moore, etc., 65 Ky. 108, involved the construction of a statute which authorized the sheriff, upon a proper order of the circuit court, to employ extra guards at the expense of the county, to protect the county jail. The guards were employed under this order and their compensation audited by the circuit court; but notwithstanding their claims had been thus audited, the Supreme Court of Kentucky held that the county court could not be compelled by mandamus to levy a tax to pay their claims against the county, because it was proven that said guards had been unfaithful in allowing prisoners to escape from the jail which they were employed to guard.

If the audit of a claim by a circuit court is not such a judicial act as to bar inquiry in a proceeding by mandamus, then with much stronger reason we should say a mere school enumeration is not such a judicial act as to be invulnerable to attack in the same kind of an action.

In the case of Van Akin v. Dunn, 117 Mich. 421, a contractor for certain drainage work for a county failed to perform his contract according to agreement, whereby the drainage was ineffective. However, the commissioner appointed to supervise the work and audit the contractor's bills, approved the work and issued his order therefor against the county. An assignee of said order sought by mandamus to compel the payment of same by the treasurer of the county. In refusing to grant the writ, the Supreme Court of Michigan said: "The record clearly shows that Bolton did not perform his contract, and that he is not entitled to payment, and in this respect, his assignee is in no better position. The writ of mandamus is a discretionary writ and, while it may issue where there is a clear legal right, a court should always refuse it where the record shows the injustice of the relator's claim. This it may do and should do in the interest of fair dealing and good morals, whenever the claim is tainted with fraud."

"Mandamus is a discretionary writ, and those who invoke its aid must come into court with clean hands. It will not be issued to accomplish an illegal purpose." [26 Cyc. 325.]

In the case of Board of Supervisors v. Township Supervisor, 94 Mich. 386, the full board of supervisors of a county had ordered the levy of a tax for the pretended purpose of purchasing a county poor farm, but, in fact, the purchase was intended for a tannery. There being no law authorizing a tax levy for such last named purpose, certain township supervisors of the county refused to spread such tax upon their rolls,

on the ground that while the order for its levy designated a lawful purpose, to-wit, the purchase of a poor farm, yet the real and secret purpose of levying the tax was illegal and unauthorized. The Supreme Court of Michigan held that the township supervisor, although acting under a plain statutory duty to levy and spread upon his rolls such tax as the county board had ordered, could not be compelled by mandamus to spread upon his rolls a tax which was fraudulent and ordered for an illegal purpose.

Whether the enumeration under consideration is correct, as alleged by relator, or padded with fictitious names, as contended by respondent, I think the majority opinion which bars an inquiry into the disputed facts, is wrong and may encourage the padding of other school enumerations and the consequent unlawful diversion and withdrawing of the public school moneys from the State Treasury. *Kennish, J.,* concurs in the views expressed in this dissenting opinion.