[No. 12546.   Department One.   February 9, 1915.]

THE STATE OF WASHINGTON, on the Relation of School District No. 301, of Whatcom County, Plaintiff, v. JOSEPHINE C. PRESTON, as Superintendent of Public Instruction, Respondent.[1]

SCHOOLS AND SCHOOL DISTRICTS—STATE SCHOOL FUNDS—APPORTIONMENT—STATE SUPERINTENDENT—SUPERVISORY POWERS—STATUTORY PROVISIONS. Under 3 Rem. & Bal. Code, § 4562, providing that the superintendent of public instruction shall apportion to the several counties such current school funds as have been certified by the state auditor to be on hand, and 2 Id., § 4563, providing that, for the purpose of such apportionment, the state superintendent shall base his calculations upon the days' attendance as shown by the several county superintendents' last annual reports filed in his office, the state superintendent has discretionary power to refuse to apportion funds for attendance during a period of five days, shown by a county superintendent's report to extend over a portion of the summer vacation during which it was contrary to law to hold school, in view of the very wide supervisory powers given the state superintendent by 2 Id., §§ 4303 and 4307.

MANDAMUS—NATURE—PURPOSES. Since mandamus is a discretionary writ, it must be sought with clean hands, and will not issue to accomplish an illegal purpose, viz: to obtain an apportionment of school funds on account of five days' attendance of school held during the prescribed vacation period, in violation of Rem. & Bal. Code, § 4509.

MORRIS, C. J., and CHADWICK, J., dissent.

Application filed in the supreme court January 13, 1915, for a writ of mandamus to compel the state superintendent of public instruction to apportion certain current school funds.   Denied.

[1]Reported in 146 Pac. 175; 149 Pac. 352.

*Kellogg & Thompson,* for relator.

*The Attorney General* and *Edward W. Allen, Assistant,* for respondent.

HOLCOMB, J.—School District No. 301 of Whatcom county seeks a writ of mandamus to compel the respondent, as state superintendent of public instruction, to apportion the current school funds of this state, to Whatcom county and to district No. 301, upon the basis of the actual days of school attendance as shown by the last annual report of the county superintendent of schools of Whatcom county.

It is alleged that the respondent, in making the apportionment of school funds in the month of October, 1914, arbitrarily reduced the school attendance of relator district five days for each and every pupil attending school in said district.

The respondent pleaded, in her answer to the application for the writ, that school was maintained in the relator district for the period of five days between June 1, 1913, and September 15, 1913; that, according to the annual report of the superintendent of schools of Whatcom county for the school year ending June 30, 1914, there was a total school attendance in the relator school district of 834,443 days, and that the public schools in said district had been in session a total of 187 days, but that said report did not show the day of the opening nor of the closing of the schools within said district nor the particular days said schools were in session; that five of the 187 days during which the schools in relator district were in session for said year ending June 30, 1914, were within the said vacation period of the summer of 1913, and that the reduction in the number of days' attendance in relator district in making the apportionment by said respondent was by reason of said five days above referred to. Respondent further pleads that it is the practice and the duty of said respondent, as superintendent of public instruction, to require the county superintendent of Whatcom coun-

ty to file with the respondent one copy of the annual report of the city superintendent of schools of the city of Bellingham, which is the relator district No. 301, and that such report of said city superintendent shows the date of the commencement of the school term in such district, and also the number of days' attendance; that, upon the receipt of the annual report of the county superintendent of schools, the same is checked over for errors, and a statement of such errors submitted to the county superintendent, together with a statement of the apportionment for such county based upon such county superintendent's report, and that such county superintendent is required to recheck, sign, and return to said respondent such apportionment statement, and that no apportionment of funds is made until these requirements have been complied with.   Respondent further pleads that the procedure above referred to was pursued with reference to Whatcom county as to the apportionment made October 20, 1914, and that numerous errors were discovered in the report of the county superintendent of schools of Whatcom county for the year ending June 30, 1914, and that a letter was written to such county superintendent calling attention to the same; that a further letter was written to said county superintendent on August 26, and that the apportionment statement for Whatcom county was also sent with said letter, and that said statement was corrected as to errors set forth in said letter, and that said apportionment statement corrected was later certified by such county superintendent of schools and returned to the respondent and filed in her office September 23, 1914; that such apportionment statement reduced the apportionment made to Whatcom county and the relator school district five days or five one hundred-eighty-sevenths, due to the fact that information concerning said five days' school held during the vacation period of the summer of 1913 was obtained from the report of the city superintendent of schools of the city of Bellingham, although said information was not obtained specifically by the

annual report of the county superintendent of Whatcom county alone.

To these affirmative answers of respondent, the relator demurs and by its demurrer admits the affirmative allegations contained therein. The relator earnestly contends and urges that the apportionment of school funds by the state superintendent of public instruction is a mere ministerial act in which she has no discretionary powers, but that she must apportion them upon the annual report of the county superintendents of the various counties, and has no power to revise, correct, review, or modify the same, and that in so doing, as is alleged in this case, her action was arbitrary and without warrant of law. Section 4562, 3 Rem. & Bal. Code, relating to the apportionment of current state school funds, provides as follows:

"The superintendent of public instruction shall apportion to the several counties of the state on or before the 20th day of July, October, January, April, May, and June of each year such current state school funds as have been certified by the state auditor to be in the hands of the state and county treasurers."

Section 4563, 2 Rem. & Bal. Code (P. C. 413 § 535) provides:

"For the purpose of the apportionment the superintendent of public instruction shall base his calculations upon the days' attendance as shown by the several county superintendents' last annual reports filed in his office."

It is the contention of relator that the provisions of § 4563, *supra*, are mandatory and leave no discretion whatever with the superintendent of public instruction, but that the apportionment of current state school funds to the several counties of the state must be made upon the actual days' attendance as shown by the county superintendent's last annual report, and that the state superintendent has no power or authority under the law to modify or change the annual report of such county superintendent of schools. Many auth-

orities are cited by relator to the point that the respondent's duties in this matter are purely ministerial, and that she could not inquire into the correctness of the county superintendents' reports; citing *People ex rel. Trustees of School Dist. No. 25 v. Board of Town Auditors*, 126 N. Y. 528, 27 N. E. 968; *School District No. 2 of Multnomah County v. Lambert*, 28 Ore. 209, 42 Pac. 221; *Clark v. Cline*, 123 Ga. 856, 51 S. E. 617; *State ex rel. Tanner v. Cheetham*, 23 Wash. 666, 63 Pac. 552; and *State ex rel. Randolph County v. Evans*, 240 Mo. 95, 145 S. W. 40, Ann. Cas. 1913 B. 1262.

Great reliance is placed upon the last cited case. We find it was decided by a divided court, a bare majority holding to the view that the state superintendent of public instruction of Missouri had no discretion in the matter of apportioning funds where it was claimed by him that the county and school district had fraudulently padded the enumeration or census of the school districts. Upon that same question, we find the authorities about evenly divided, the courts of Kentucky, Georgia, Montana, and Tennessee holding to the contrary. In any event, the matter of going behind the school census taken by enumerators and requiring a considerable investigation to review or correct is very different from reviewing the report or returns of a county or school district officer. In this state, the code of education, which prescribes the duties of school district and county officers and of the state superintendent of public instruction with regard to the public schools and the public school funds, confers upon the state superintendent very wide powers. Section 4303, Rem. & Bal. Code (P. C. 413 § 3 *et seq.*), provides:

"The administration of the public school system shall be intrusted to a superintendent of public instruction,  .  .  . to county superintendents of common schools, to boards of directors and district clerks."

Section 4307, Rem. & Bal. Code (P. C. 413 § 9 *et seq.*), provides among other things:

"The powers and duties of the superintendent of public instruction shall be:

"First.  To have supervision over all matters pertaining to the public schools of the state.  .  .  .

"Third.  To prepare and have printed such blanks, forms, registers, courses of study, rules and regulations for the government of the common schools, questions prepared for the examination 'of teachers, and such other blanks and books as may be necessary.  .  .  .

"Ninth.  He shall file all papers, reports and public documents transmitted to him by the school officers of the several counties of the state, each year separately.  Copies of all papers filed in his office, and his official acts, may be certified by him and attested by his official seal, and when so certified shall be evidence equally and in like manner as the original paper.  .  .  .

"Nineteenth.  To perform such other duties as may be required by law."

Section 4472 *et seq.*, Rem. & Bal. Code (P. C. 413 § 345 *et seq.*), provide for the election of county superintendents of schools in each county, and define their powers and duties. Section 4475, subd. 11 (P. C. 413 § 351), requires county superintendents:

"To make an annual report to the superintendent of public instruction on the first day of August of each year, for the school year ending June 30th, next preceding.  The report shall contain an abstract of the reports made to him by the district clerks, and such other matters as the superintendent of public instruction shall direct.  And it shall be the duty of the county commissioners and county auditor in every county wherein the county superintendent is about to retire from office to withhold the warrant of his salary for the month of July until they shall have received a certificate from the superintendent of public instruction that the annual report of such county superintendent has been made *in a satisfactory manner* [the italics are ours] ; and it shall be the duty of the superintendent of public instruction to transmit such certificate to the auditor immediately upon receiving such satisfactory report."

Section 4412, Rem. & Bal. Code (P. C. 413 § 225), provides that all school districts in this state shall maintain school during at least six months each year; Id., § 4509, provides, among other things:

"Every board of directors of a school district of the first class shall, . . . have the power: . . .

"Fifth.   To employ, and, for cause, to dismiss teachers, and janitors; to determine the length of time over and above eight (8) months that school shall be maintained, such length of time to give a consecutive vacation of not less than three months between June first of any year and September 15th of the same year; to fix the time for annual opening and closing of schools, and for the daily dismissal of primary pupils before the regular time for closing schools."

Under the last section it will be noted that the law provides that, in school districts of the first class, there shall be a vacation of not less than three months between June 1 of any year and September 15 of the same year.   There does not appear to be any provision for the enforcement of this provision.   It may be, as relator says, that this is an extraordinary provision of the law, but with that we have nothing to do.   The legislature has seen fit to enact it into law, and must have had sufficient reason therefor.   The relator in this case admits that it violated the law by holding school for five days during the interdicted or vacation period.

"Since mandamus is a discretionary writ and those who invoke its aid must come into court with clean hands, it will not be issued to accomplish an illegal purpose, . . ."   26 Cyc. 325.

Relator urges with some vigor that the school district should not be penalized for the violation by the school district officers of the law requiring continuous vacations from June 1 to September 15 of any year when, as a matter of fact, school was actually held and the actual attendance for the five days was deducted by the relator.   But, on the other hand, the school district through its officers should not wilfully or carelessly violate the law and then ask the court

to relieve them of the consequences thereof.  The respondent merely withholds funds which relator has not lawfully earned. Conversely, had relator earned the funds, according to statute, it could lawfully enforce apportionment.  Moreover, as the pleadings stand, upon the statement of the respondent that the report of the county superintendent of schools was not correct as to the days' attendance of the relator district, the county superintendent did, in effect, correct the report for Whatcom county in the manner pointed out by the respondent, and upon such corrected report the respondent made the apportionment complained of.  Of course, the county superintendent corrected it upon the request or demand of the respondent.  That, in our opinion, avails nothing, for if, as contended by the relator, the county superintendent is the sole arbiter of the attendance to be certified for the county, she certainly could have refused to report any other way than as she saw fit.

The relator relies largely upon the decision of this court in the election cases, *State ex rel. Case v. Superior Court*, etc., commonly called the "Seven Sisters" cases, decided September 21, 1914, reported in 81 Wash. 623, 143 Pac. 461. The decision in those cases is not in point.  It was held in those cases specifically that the secretary of state was purely a ministerial officer as to the matters there involved, and furthermore it must be conceded that the secretary of state has no supervisory control or authority over election or registration officers of high or low degree.  In this case, however, the state superintendent of public instruction, throughout the school code, has very great powers of supervision and control over all the subordinate officers of the common school system. It has been held by this court, in the case of *Great Northern R. Co. v. Snohomish County*, 48 Wash. 478, 93 Pac. 924, and followed later in the same case in 54 Wash. 23, 102 Pac. 881, that general supervision means something more than the power merely to confer with and advise, or to receive reports, or file papers.  In other words, that the power of supervision

is not granted to an officer as a mere formality. Suppose, for instance, that the county superintendent had made a report of attendance for the relator school district considerably less than the actual attendance. Would it not be claimed by relator that it could compel the county superintendent to correct the report, or cause the state superintendent to apportion the current funds to the district upon the actual attendance, *notwithstanding* the county superintendent's report? And certainly it would have the right to have the matter corrected in some wise. If that be correct, why is not the converse of the proposition likewise correct?

We believe that the respondent acted within her legal powers and authority in making the apportionment. The writ is therefore denied.

PARKER and MOUNT, JJ., concur.

MORRIS, C. J. (dissenting)—The office of state superintendent of public instruction is created by statute; its duties and powers are defined by statute. Whenever, therefore, any question arises as to the nature or extent of such duties or powers, reference must be had to the statute to determine it. Referring to the so-called school code, wherein is to be found all the law relating to the public schools of this state, I look in vain for any such delegation of power, the exercise of which results in the act here complained of. No such power is vested in respondent by any law. Nor is there any legal warrant for imposing such a penalty. The school code devotes one entire chapter (Laws 1909, p. 357, Tit. III, ch. 14) to the subject of penalties, providing for various penalties for various acts deemed violations of the provisions of the code. No reference is there made to the penalty sought to be enforced in this case. The legislature, having provided the various penalties to be imposed, it must be assumed that such penalties are exclusive of all others. Assuming, therefore, all that respondent contends as to the extent of her supervisory powers over all matters pertaining to the common schools of

this state, I must withhold from her the right to reduce the apportionment of this school district, because nowhere in the law is she vested with such a power, and not being vested with such a power, she cannot exercise it. I therefore dissent.

CHADWICK, J., concurs with MORRIS, C. J.

## ON REHEARING.
### [*En Banc.* June 8, 1915.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adhere to the opinion heretofore filed herein. For the reasons there stated, the writ is denied.